## DAVIS *v.* BARRINGTON.

Where a bond, signed by two persons, is offered in evidence, given to secure the performance of a contract, and from the manner of its execution warranting the inference that the contract, the performance of which it was intended to secure, was the joint contract of the two signers, parol evidence is admissible, for the purpose of rebutting such inference, that one of the signers was in fact only a surety in the bond; the relation of the signers appearing to be known to the obligees of the bond.

Where the construction of a highway was contracted to be performed according to the terms of a special contract, to the acceptance of the agents of the town, and an action is commenced to recover for the labor and materials furnished, the use of the way by the public, afterwards, is not competent proof of an acceptance prior to the commencement of the action.

Where a party has agreed to construct a highway for a town according to the terms of a special contract, but has failed to perform the contract completely, he will, nevertheless, be entitled to recover so much as the town shall be benefitted by the labor performed and the material furnished, over and above the damage sustained by reason of the failure to complete the contract according to the terms of it.

ASSUMPSIT.   This action was brought December 27, 1852, to recover for making a piece of road.   The writ contains a count for work and labor and materials found and a *quantum meruit* count.   The section in dispute is mostly upon the plaintiff's land, and is about one hundred and forty-four rods in length, and it is the middle portion of a much longer highway, which was laid out by the selectmen in 1851. The plaintiff proved that he bid off at auction the making of this section, but did not show upon what conditions his bid was made.   He also proved that he worked upon the road, and in the latter part of September, 1852, called upon the selectmen to accept it, and introduced evidence tending to show that they did accept it, and promised to pay him at the fall election.   The deposition of John W. Hill tended to prove that the road had been used to some extent by the public since it was made.   The evidence did not show that any travel except two wagons had passed over the road when the selectmen were called upon in Septem-

ber, 1842. In respect to the use of the road between that time and the date of the writ, the evidence was indistinct, but it tended to show some slight use by the inhabitants who lived upon the new highway. The one hundred and forty-four rods terminated in woods at one end; and other portions of the highway are not yet fully completed, though the town is still engaged upon the same. An old road or path ran in the general direction of the new highway, and crossed the one hundred and forty-four rods at the terminus at the woods.

The defendants offered in evidence a bond to the town, executed by the plaintiff and one Tebbetts, after the auction, and conditioned to be void if they should build the road as stated therein, to the acceptance of the selectmen, and, also, evidence that the selectmen gave a paper, showing what sum was to be paid for the work. The evidence on the part of the town tended to show that the road was not built according to the bond, and that though the selectmen were called upon the last of September, they did not accept the road, either then or afterwards; that the plaintiff on that occasion said, if they would not accept the road as it was, he would shut it up, and plant it with potatoes; and finally said he would do more, but still, within a few days afterwards, a fence with bars was built by some one across the road upon the plaintiff's land, without the knowledge of the selectmen, and remained there till after the suit was commenced, and that the plaintiff called upon them Saturday, the 25th of December, 1852, and in answer to the inquiry if he had completed the road according to the contract, said he had. They were too busy to examine the road that day, and proposed to do so the Wednesday after, but he said they must take his word for it, and he should wait no longer; he then left them, and on the Monday after brought his suit.

When the bond was offered the plaintiff's counsel objected to its admission, for any purpose, but the objection

was overruled, and it was received as evidence of a contract by Davis and Tebbetts to build the road according to the condition of the bond. It appeared that the work was done by Davis alone, and that all the transactions in 1852, in respect to the road, were between him alone and the selectmen of that year; but there was no other evidence to show that the written contract had been waived or abandoned, so far as Tebbetts was concerned.

The execution of the bond was proved by Albert H. Daniels, who was a selectman in 1851, but not in 1852. After this witness had left the stand, having been examined and cross examined, the plaintiff's counsel requested permission to recall him to answer " whether, at the time the bond was given, he understood that Tebbetts was a surety." The court did not think the proposed evidence competent, and for that reason refused permission. The plaintiff's counsel conceded that the road had not been built according to the condition of the bond, but he claimed to recover for what had been done, if beneficial to the town.

The court instructed the jury that if the contract was made with Davis alone, and if he had performed it on his part, he could, in this action, recover the stipulated price with or without an acceptance; that if the agreement was with the two, one of them could not sue alone for work done under it, unless they should find that the original contract had, in respect to the joint parties, been waived or abandoned; but if the plaintiff alone had built the road, though not in accordance with the special contract, he might recover a reasonable sum, not exceeding the contract price, provided he proved an acceptance prior to the bringing of the suit. As to what would constitute an acceptance, the jury were instructed that it might be expressed or implied; if the selectmen actually consented to take the road as it was, and pay for it, there was an express acceptance; if not, yet, if the town had in any way voluntarily taken the benefit of the plaintiff's services prior to the suit, as by opening

the road to public travel, an acceptance should be implied ; but that proof that the road had been used for public travel since the commencement of the suit was not sufficient to show an acceptance prior to that time. The jury were also told that the court had understood the plaintiff's counsel to maintain that if the services were beneficial, they were necessarily accepted from time to time as the work was performed, like the labor of a man hired for a year. But the court could not accede to that statement of the law, for, in the opinion of the court, such a proposition involves the question not only what ought the town eventually to pay, but when should it be required to pay ; whether a party who was to be paid when he performed his contract to build the road in a particular manner, could be permitted, upon a part performance, and without the consent of the town, to sue immediately, and recover, if he should be able to satisfy the jury that the road was useful to the town, or whether, not having performed his agreement, he must not wait until the town had some occasion to use the road, thus imperfectly constructed ; that in the opinion of the court it would be unjust to compel a payment for a part performance, without either an express acceptance or a voluntary appropriation prior to the suit, and it might be that the town, upon an examination, would not think it prudent to allow the public to use a road thus imperfectly constructed; it might be that until the whole road should be built, the town would not wish to use any part ; the town might, under some circumstances, prefer to discontinue the imperfect road, and not use it at all, and, therefore, the rule of law was not supposed to be correctly stated by the plaintiff's counsel, and the jury would take the rule which the court had given them as the law of the case—if there was but a part performance and no express acceptance, it must appear that the town had in some way voluntarily taken the benefit of the plaintiff's work before the suit, or this action could not be sustained.

The verdict was for the town, and the plaintiff's counsel moved to set it aside because of said rulings and instructions.

It was ordered that the questions arising upon said motion be transferred to this court.

*W. B. Small*, for the plaintiff.

I.   The bond, if any evidence, was not conclusive evidence of a contract of Davis and Tebbetts to build the road.   Parol evidence was admissible to explain or contradict it.   2 Stark. Ev. 21; 1 Greenl. Ev. § 285.   And the plaintiff should have been allowed to show that Tebbetts executed the bond as surety merely, and that it was known to the selectmen at the time.   *Pollard* v. *Stanton*, 5 Ala. Rep. 451; 4 U. S. Dig. 734, § 1793; *Harris* v. *Brooks*, 21 Pick. 195; *Grafton Bank* v. *Kent*, 4 N. H. Rep. 221; *Smith* v. *Bing*, 3 Ohio Rep. 185, cited in 2 Stark. Ev. by Gerham, 753, note a; Chitt, on Cont. 103, note 1, Perkins' Ed.

The court refused permission to recall the witness to this point, not upon the ground of discretion, under the forty-sixth rule, but because they deemed the evidence incompetent.

II.   The court instructed the jury that if the plaintiff alone had built the road, but not according to the contract, he could not recover, unless the town had accepted the road prior to the bringing of the suit; and that proof that the road had been used for public travel since the commencement of the suit, was not sufficient to show an acceptance prior to that time.   This ruling was erroneous—

1.   Because the plaintiff having built the road, was entitled to recover to whatever extent his services were reasonably worth to the town; and no action upon the part of the town, subsequent to the performance of the labor, was necessary, in order to enable the plaintiff to maintain this suit. *Wadley* v. *Sutton*, 6 N. H. Rep. 15; *Britton* v. *Turner*, 6 N. H. Rep. 481; 1 Parsons on Contracts 525.

2.   Because the nature of the contract was such that the

town could not reject what had been done, and refuse to re-
ceive any benefit from a part performance ; and the use of
the road by the public since it was built is evidence that the
town had not undertaken to do so.

3.   Because the sufficiency of evidence is a question for
the jury, and cannot be determined by the court.

4.   Because the ruling assumes that a mere breach of the
contract, without any evidence or pretence of damage by
such breach, or any claim for a deduction on that account, is
a sufficient defence to this suit.   *Britton* v. *Turner*, 6 N. H.
Rep. 495.

III.   The proposition stated to have been maintained by
the plaintiff's counsel, is correct, as a rule of law applicable
to this case.   *Britton* v. *Turner*, before cited.


*Hatch & Webster*, for the defendants.

I.   The bond was properly admitted as evidence of a con-
tract by Davis and Tebbetts to build the road according to
the conditions of the bond.

The court were right in refusing permission to recall Dan-
iels to answer " whether at the time the bond was given he
understood that Tebbetts was a surety."

To admit such evidence would be to allow mere contem-
poraneous mental impressions to be received to alter the im-
port of a written contract.   Not even contemporaneous ver-
bal expressions can be so received.

The contract being with Davis and Tebbetts, and there
being no waiver of it as to Tebbetts, Davis could not sue
alone for work done under it.   Chitty's Pleadings 8, (a.)

II.   The court instructed the jury correctly that the plain-
tiff could not sustain his action without an express accept-
ance, or a voluntary appropriation by the town, of the plain-
tiff's work, prior to the commencement of the suit.   *Wad-
leigh* v. *Sutton*, 6 N. H. Rep. 15 ; *Hayden* v. *Madison*, 7
Greenl. Rep. 76 ; *Taft* v. *Montague*, 14 Mass. Rep. 285.

The use of the road by individuals does not amount to

an appropriation of the plaintiff's work by the town. See cases in Greenl. and Mass. Reps., cited above.

The work was not necessarily beneficial to the town. The town might reject what was done, and discontinue the road. This piece of road was only the middle portion of a long unfinished road. ` Smith v. Scott's Ridge School District, 20 Conn. Rep. 312.

WOODS, C. J. It was material to the plaintiff to show that the work done in this case was done in pursuance of his individual contract with the town. If not, the action could not be maintained. If done in pursuance and in performance of a joint contract, entered into by the plaintiff and Tebbetts with the town, this action could not be maintained. The evidence would not support the declaration. It would furnish the case of a variance.

The bond, given in evidence by Barrington, clearly tended to show the contract for working the road to be the joint undertaking of Davis, the plaintiff, and Tebbetts. It was executed by the plaintiff and Tebbetts to the town, and was conditioned to be void if they (Davis and Tebbetts) should build the road, as therein stated, to the acceptance of the selectmen. From the form and phraseology of the bond, and the manner of its execution, it was fairly to be inferred that the contract for building the road was the joint undertaking of Davis and Tebbetts, and not the individual agreement of Davis. It was such a bond in its terms and frame as might be expected, and as would usually be given to secure the performance of such a contract. It was an appropriate instrument to effectuate such an object.

It was material to the plaintiff, by evidence, to rebut the inference naturally to be made from the phraseology of the bond, and the manner of its execution, if by law he might. It was proposed to do that, by showing that Tebbetts was in fact a mere surety in the bond, and in that way to show that Davis was the real contractor alone, and that Tebbetts'

undertaking was only for the performance .of Davis' con-
tract. And that fact appearing, would have a tendency to
rebut the inference naturally and properly to be made from
the bond, without the aid of the fact proposed in explana-
nation of the transaction.

It was proposed to show by parol evidence that the real
character in which Tebbetts executed the bond, was that of
a surety for Davis merely. The evidence thus offered was
ruled out, and the question is whether the ruling was correct.

The putting the name of Tebbetts to the bond, without
more, was an equivocal act. It is well known that fre-
quently instruments are signed in the manner in which this
was, and yet some of the signers are mere sureties. It is
not said in such case, upon the instrument, whether they are
sureties or principals. And as between the defendants, no
doubt was ever entertained, we apprehend, that it was com-
petent for them to show by parol their true relations to each
other. It is believed, moreover, that it is only when the
language of a contract is unequivocal, that it admits of no
parol explanation of its terms and their meaning, when ex-
planation is the object of the proof. It is important, how-
ever, to look at the precise object of the evidence offered in
this case. It was not offered to vary or change the terms
of the contract in Davis' bond, or to weaken its force, or to
explain it, in order to change its legal effect or interpretation,
or to limit its scope and extent. The purpose was to show
a collateral fact, namely: the relation of the defendants to
each other, and thereby to show somewhat the character of
a contract outside of the bond, of which the bond furnished
some evidence, although not conclusive, not in express terms,
but by way of inference, from its terms and form. The evi-
dence then offered, has not to encounter the objection, the
validity of which no one doubts, that parol evidence is not
admissible to vary, or explain, or limit a written contract
between the parties in the litigation to be affected by it.
As between the town and Davis and Tebbetts, it would not

have affected the terms or legal effect of the bond, but they would have remained the same as they now are, if the word "principal" had been affixed to the name of Davis, and "surety" to that of Tebbetts. The bond would have been equally obligatory, and would have had the same binding force, and would have been a contract of the same scope and extent as it now is. Those words are properly to be regarded as words of description, and not as parts of the contract, in any manner adding to its force, extent, scope or validity. They have no legal operation upon the contract, or its terms or force, but only indicate the relation in which the parties stand to each other, and notice thereof to the holder of it. This view of the law, upon the question under consideration, is fully maintained in the case of *Harris* v. *Brooks*, 21 Pick. 195. The language of the court in *Smith* v. *Bing*, 3 Ohio Rep. 185, seems fully to recognize the doctrine before stated. It is there said that "the relation of principal and surety, where the obligation itself imports a joint debt, is universally recognized by courts of justice, and parol proof admitted to establish its existence." In that case, Bing had executed a bond with one Watkins, in fact as his surety; but that did not appear upon the face of the bond. The plaintiff afterwards became special bail in a suit against Watkins, and was thereby subjected to the payment of a portion of the debt, and brought this action to recover the amount, of the defendant. In answer to the action, the defendant was allowed to show by parol that he was surety in fact in the bond, and the ruling of the court was, in that, sustained. The parties to the litigation were not both of them parties to the bond, and although that might furnish an additional answer to the objection urged against the admissibility of the evidence, (*Furbush* v. *Goodwin*, 5 N. H. Rep. 425,) yet the court did not put the decision upon that ground, but upon the general principle; and it is therefore for that reason proper to regard that decision as an authority in support of the objection taken to the

ruling of the court in this case. The case of *Grafton
Bank* v. *Kent*, is an authority directly in conflict with the
ruling of the court rejecting the evidence offered in this case.
There the action was between the parties to the contract.
At the trial in that case, the defendant offered to show by
parol evidence, in defence of the action, in connection with
other facts, that he was only a surety upon the note in suit.
It was objected that, inasmuch as that fact did not appear
upon the face of the note, the evidence went to contradict
the note, and was therefore inadmissible. In finally deter-
mining the question, after citing a pretty wide range of au-
thorities, Chief Justice *Richardson* states the opinion of the
court thus: " And we are all of the opinion that the rule is,
where then the maker of a note, who has signed as a surety,
does not appear on the face of the paper to be a surety, he
is to be considered and treated as a principal, with respect
to all those who have no notice of his real character, but
that whenever it is material, a defendant may show, by ex-
trinsic evidence, that he made the note as a surety only, and
that it was known to the plaintiff that he was only a surety."
The proposition in this case was to show that the witness,
who was one of the selectmen of the town, understood, at
the time the bond was given, that Tebbetts was a surety.
It was a proposition to show that at least one of the agents
of the town had knowledge of the fact that he was a surety.
An affirmative answer to that inquiry would certainly have
been competent evidence, as tending to show a notice to the
agents of the town, or knowledge on their part, which
would be notice to the town, of the character in which Teb-
betts signed the bond. Perhaps the judge might have re-
fused to give opportunity to the party to lay the proposed
evidence before the jury, upon the ground that it was un-
reasonable, under the circumstances, further to examine the
witness, who had left the stand, and was desired to be re-
called. But that was not the ground of the refusal, but the
distinct ground was the incompetency of the proof offered,

and that alone. We think, therefore, that the plaintiff was well entitled to avail himself of the exception taken to the ruling of the judge in this particular, as a ground of motion to set aside the verdict. And upon the authorities referred to, and the views already expressed, we think it is quite clear that the ruling of the court was, in this particular, erroneous, and that for that cause must be set aside.

Another and more important question remains for decision. That question is, whether the town is liable in this action, notwithstanding the special contract to build the road had not been fulfilled according to its terms, when the action was commenced. We think it cannot properly be holden that the use of the way by the public, after the action was brought, is competent evidence to show an acceptance of the road by the agents of the town, prior to that time. If the use be evidence of the acceptance of the way, anterior to the commencement of the use, to what period will it carry back the acceptance ? It is necessary for the purposes of the plaintiff that the acceptance should be shown to have been prior to the action. That period might be longer or shorter. And shall the use carry the evidence of the acceptance back to a period prior to the action, alike whether the use commences a month, or a year, or five years after action is brought ? We think such a view would be unreasonable. In fact, we think no principle can be found or stated upon which to hold that the acceptance was prior to the action, upon the mere fact of the public use appearing at a period soon after or remote from the date of the suit. It would be much more reasonable to hold that the use was evidence of an acceptance from such time after its commencement as would furnish reasonable ground to believe that the agents of the town had knowledge of it, and assented to it. But it is not necessary to settle the time from which the use is evidence of the acceptance, farther than to say it does not show it prior to its commencement. It would seem to be the doctrine in this State, and in other jurisdictions, that

where labor is done and materials found by a person for another, upon a special contract, and the contract is not performed according to its terms, that when the services are of a character, and the materials found are furnished under such circumstances that the same can be rejected and refused, and the obligee can avoid receiving any benefit therefrom, and does not in fact assent expressly or by implication to the same, but refuses to accept the same, the party so performing the labor and furnishing the materials, will not be entitled to recover for the services and materials, for the reason that the contract is not performed, and that the person for whom the services were rendered and the materials furnished, has not in fact been benefited thereby, but has properly and lawfully refused to accept the same, they not being in accordance with the contract.

But there is a class of cases in which the services of the person who may be employed to serve under a special contract, are, from their very nature, accepted from day to day, as the labor progresses, and where the benefit of the labor must necessarily be regarded as accepted, and the benefits thereof appropriated by the employer, who, notwithstanding he will not be liable upon the special contract, by reason of its non-fulfillment, will nevertheless be liable to pay the fair price and value of the benefits resulting from the partial performance of the contract, over and above the amount of damage sustained by the breach, but never exceeding the contract price.

Of the latter class of contracts, is that of the contract of a party to labor for another in his employment, and in his service and business, for a specified period of time. In such a case, it has been holden in this State that a recovery may be had to the extent of the benefits of the labor to the employer, over and above the damage he may have sustained by the breach of the contract. *Britton* v. *Turner*, 6 N. H. Rep. 481. It is there said that "when the contract is to labor from day to day, for a certain period, the party for

whom the labor is done, in truth stipulates to receive it from day to day, as it is performed, and although the other may not eventually do all he has contracted to do, there has been necessarily an acceptance of what has been done in pursuance of the contract, and the party must have understood, when he made the contract, that there was to be such acceptance."

Whatever might be the views of the court as at present organized, in a case like that of *Britton* v. *Turner*, and however much, even, some may think it is to be regretted that the rule of law there laid down was allowed to obtain, still, considering that it has remained as the law of the State for nearly twenty years, and has never been overruled, and that while it has the strong feature of its direct tendency to the wilful and careless violation of express contracts fairly entered into, to lead to its condemnation and disapproval, it has also some features of advantage and strong justice to recommend it. We, on the whole, are not inclined to disturb the doctrines of that case, but to adopt and apply them.

It becomes important, then, in this case, to inquire to which class of contracts mentioned, the one under consideration belongs; whether it is of the character where the services may be rejected and their benefits refused, or where they are to be regarded as accepted from day to day, and not capable of rejection ?

And we are of the opinion that it falls within the latter class. The labor was performed in the business of the defendants. It was done in the construction of a road, which the town were by law bound to construct and keep in repair, and what was done tended to that result, although the construction was not completed according to the plaintiff's contract. The services in constructing the road were of a character not to be rejected, and the benefits of which were necessarily received by the town from day to day, in aid of a work which they were bound to perform, and which was their

business. The contract, we think, cannot be distinguished, in this particular, from that of a contract to labor for another upon his farm, or in transporting his goods, or in the various other avocations of life, where the labor is performed from day to day for specified time. Here the contract was for a specific amount of work, which, of course, involved the idea of a continued series of days work, from day to day, until it should be completed. Nevertheless, we think the labor is to be regarded as received from day to day, as when time is the limit of the labor to be performed, and the benefits received in a contract like the present are not of a character to be rejected.

The time of payment was, of course, the period of the completion of the job, no other time being specified; and it not being completed, was the plaintiff entitled to maintain this action, at the time of its commencement?

It has been holden in this State that in such a case no action will lie until the time when, by the terms of the contract, money would become due, in case the contract were fulfilled. In this case, the contract was, of course, to be fulfilled in a reasonable time, no specified time for its fulfilment being fixed therein. If, then, it should appear that a reasonable time had not elapsed at the date of the suit, it may be found, upon investigation of the question, that the action cannot be maintained.

But that fact the case does not find, and no sufficient evidence is reported on the point, and we give no opinion thereon.

*Verdict set aside.*