DAVID BALL *v.* THE TOWN OF WINCHESTER.

A town is not liable for damage occasioned by the acts of a surveyor of highways within the scope of his authority, except in cases where such liability is imposed by statute; and he is not to be considered the agent of the town in making repairs upon highways within the town, so as to charge the town for damage occasioned by his illegal acts.

Whether a town may be made liable for special damage happening through the neglect of the town to perform a duty imposed upon them without a statute provision giving the suffering party an action for such damage, *quære?*

If the town is to be made liable in such case, *semble* that the duty from the neglect of which the damage results, must be one owing from the town to the suffering party, and that the duty which the town is under to keep the highways within it in suitable repair, is a duty owing to such persons as have occasion to travel upon the highways, and not to the owner of the adjoining land as such.

The provisions of the statute, giving an action against the town for damage resulting through defects in the highway, limit the remedy to such injuries as are received by a person, his team, or carriage, directly from the defect, in using or attempting to use the highway as such.

THE declaration in this case contains three counts, as follows:

1. For that on the 1st day of November, 1853, at said Win-

chester, there was a certain common and public highway in said town called the Cross road, which said town was bound to keep in good repair; that a stream of water time out of mind was accustomed to flow along and over said highway, on the southerly side thereof, until it passed across said highway by an ancient culvert; but said town, well knowing the premises, suffered the bed of said stream and said culvert to become, and the same were, obstructed, choked and filled up with dirt, stones and other materials, whereby the water was diverted from its accustomed channel, and ran upon the premises of the plaintiff, and over-flowed his store-house, there situate, and destroyed one hundred and sixty bushels of the plaintiff's flax seed, stored therein.

2. For that said town obstructed and dammed up the water accustomed to flow in the bed and channel of said stream and through said culvert, and dug through and across said highway, so that said stream of water was diverted from its ancient and rightful channel, and ran upon the plaintiff's premises and destroy-ed said flax seed.

3. For that said town suffered and permitted the bed of said stream and said culvert to become, and the same were, filled and choked with earth and stones, whereby the water of said stream was diverted from its accustomed channel, and turned along and across said highway upon the premises of the plaintiff, and de-stroyed said flax seed.

The action was tried upon the general issue, and upon the trial it appeared in evidence that in November, 1853, the plaintiff had a store-house northerly of said Cross road, partly filled with flax seed. A natural stream of water had before the year, from time immemorial, been accustomed to flow along the southerly side of the highway into a culvert, the mouth of which was in the ditch on that side, and which crossed under the travelled part of the highway, conducting the water into the river below. The ditch on this southerly side of the highway constituted the bed or channel of the stream, when it flowed along that side of the high-way, till it came to this old culvert. In the year 1853 the owner of the premises adjoining the highway on the southerly side of it,

stopped up the mouth of this culvert, and the surveyor of high-
ways then built a new culvert across the travelled part of the
highway, above the old one, and made an embankment across the
ditch, or channel, just below the new culvert, to turn the water
across the traveled part of the highway through the new culvert.
At the time of the injury to the plaintiff's flax seed, the stream
was much swollen by rains, and the new culvert was not suffi-
ciently large to admit of the passage of all the water in the stream ;
and by reason thereof a part of the water flowed across the
highway, at the point where the embankment was made, and,
uniting with that which flowed through the new culvert, ran to
the store-house and flooded it so as to occasion damage to the flax
seed there stored.  Some part of the water flowed over the
embankment and down the channel to the old culvert, and in con-
sequence of that being stopped up flowed over the highway at
that place, and running from thence to the store-house, contrib-
uted to the injury to the flax seed.  Some question was made as
to whether the highway was one which the town were bound to
keep in repair ; but upon the views taken by the court, on other
points in the case, it is unnecessary to state the facts upon which
that question was raised.

A verdict was directed by the court for the defendants, which
the plaintiff moves to set aside.

*Wheeler & Faulkner,* for the plaintiff.

The duties and liabilities of towns in reference to highways are
not confined to the travelled part, but extend to the sides and
ditches.  *Snow* v. *Adams,* 1 Cush. 443 ; *Cassidy* v. *Stockbridge,*
21 Vt. 391 (6 Washb. 6.)

By adopting as part of the highway the bed of the stream, the
town were bound not only to keep the road in repair, including
the bed of the stream, but to conduct with the stream in the same
manner that other occupants of land are bound to in reference to
the rights of third persons. The stream and culverts, including the
inlet, being within the highway, it was negligence on the part of
the town to suffer the inlet to become filled up ; and the embank-

ment raised by the surveyor was an obstruction and encumbrance placed across the ditch by the agent of the town, while acting within the scope of his authority in the repair of the road, and is to be treated as the act of the town. The maxim that the party suffering injury from the neglect of duty of another shall have his remedy by action, is as applicable to corporations as to individuals; and the old doctrine that an action does not lie against a corporation aggregate for tort, has long been exploded. Indeed, it appears never to have had existence in this country.

When duties are imposed upon a corporation by direct statute provision, or by necessary implication, an action lies for neglect or misdoing on the part of the corporation by those suffering special damage thereby, whether a particular remedy is prescribed by statute or not. *Mayor of Lynn* v. *Farmer*, Cowper 86; *Townsend* v. *Turnpike*, 6 Johns. 90; *Turnpike* v. *Rutter*, 4 Serg. & Rawle 6; *Seagram* v. *Alton*, 13 Ill. 366.

If the condition of the highway and stream of which we complain was in the nature of a common nuisance, it was with special damage to the plaintiff, and so entitles him to a separate remedy.

*Bennett*, for the defendants.

The town cannot be made liable in this case, because—

1. The town cannot be held chargeable for the unlawful acts or malfeasances of its citizens, or officers, except in cases where the statute expressly provides it shall be so held. The agents and officers of the town must act under the authority of law, or of the votes of the town, in order to make the town liable for their acts. *Wilkinson* v. *Albany*, 8 Foster 9.

2. Nor can the town be made liable for the acts of the owner of the land, in filling up the culvert and occupying the bed of the stream. He had a right to all the road not travelled upon and used by the public. *Hopkins* v. *Crombie*, 4 N. H. 520. The stream of water belonged to the owner of the adjoining land, and if he or any other person diverted it from its channel to the injury of the plaintiff, the party who did the act may be liable, but not the town.

3. So long as the obstruction or encroachment does not impede the public travel, the town cannot be made liable in a civil suit, nor till damage has occurred to one travelling upon the highway. Comp. Stat., chap. 63, p. 151; *Hopkins* v. *Crombie, ubi supra.* The injury complained of resulted from filling up the inlet by the owner of the land; and if any portion was occasioned by the act of the surveyor, it was an act done without the authority, assent or knowledge of the town; and for damages resulting from the unauthorized acts of either owner or surveyor, the town cannot be made liable.

*Cushing,* on the same side.

The obstruction to the flow of the water in its accustomed channel, and the diversion of it to the plaintiff's premises, was the act of the surveyor. He was not the agent of the town in the act, but of the law. He was a public officer, acting under the authority of law, and not of the town. If he transcended his authority he might be personally answerable, but the town is not to be liable for the malfeasances of its officers.

As to the first and third counts, which are for the neglect of the town, public municipal corporations, having public duties imposed upon them, are not liable for private injuries resulting from their public duties, or their neglect of them. *Russell* v. *Men of Devon,* 2 T. R. 667. A private action cannot be maintained at common law against such public municipal corporation for injuries to private rights. The remedy for a neglect of duty is by indictment.

SAWYER, J. The first and third counts in the declaration proceed upon the ground that the town have neglected a duty which, by law, was imposed upon them, and that damages have resulted to the plaintiff from that neglect. The plaintiff's case, as thus set out, will be considered, after disposing of the questions arising on the second count.

The second count alleges that the channel of the stream accustomed to flow along on the south side of the road was

obstructed by the town, so as to divert the water from its channel and turn it upon the plaintiff's premises, whereby the damage complained of was occasioned. In fact, the obstruction was in part the work of the owner of the adjoining land, and in part of the surveyor of highways. Can the acts of either in this particular be regarded in law as the doings of the town, for which they are to be held answerable in case of damage resulting from them? In reference to the owner of land, it is quite clear that his wrongful acts, if any such were committed by him, can, in no view which can be taken of them, be considered as the acts of the town. And the allegation in the second count, that the town obstructed the stream and turned the water upon the plaintiff's premises, is not sustained by proof that this was done by the land owner.

The surveyor of highways, in performing his official duties, is not the agent of the town, but a public officer, clothed with such powers and burthened with such duties as the law prescribes. His authority is not derived from the town, nor is he under their control, and he cannot in any proper sense be said to act for or in behalf of the town. His powers in reference to the repairing of highways cannot be enlarged nor abridged by any action of the town upon that subject, and what he does or declines to do in the rightful exercise of his authority, is done or withheld because the law enjoins it upon him, and not because he is to act, or refrain from acting, in obedience to the injunctions of the town. He may in certain cases subject the town to liability by his official doings; as in the case of purchasing, at the cost and charge of the town, such materials as may be necessary for the repair of highways and bridges. Rev. Stat., chap. 55, sec. 14; Comp. Stat., p. 147. And for this purpose he may be regarded as the agent of the town, to the extent of purchasing materials for which they are to be liable. *Brown* v. *Rundlett*, 15 N. H. 360. So, too, he may subject the town to the payment of damages, by raising or lowering a highway, or making a ditch at the side of it, to the injury of the adjoining estate. Acts of 1848, chap. 725, sec. 1; Comp. Stat., p. 136. In the exercise of these

powers he is not properly to be considered as rendering a service for the town, or acting in their behalf, more than in his own; for if the repairs are made by him to protect the town against liability from defects in the highway, he is also protecting himself from liability, as by the statute his neglect to repair the defects renders him liable over to the town, in case of damage resulting from them. Instead of being considered as rendering a service in behalf of the town, he is to be regarded as discharging an official duty, and the town is made liable for the payment of damages resulting from those official acts, only because the statute declares that it shall be so. If the acts of the surveyor which occasioned the diversion of the water were within the scope of his official authority, they were rightful as to all the world, and there could be no stronger ground for maintaining an action against the town, on account of those rightful acts, than there was prior to the act of 1848 for maintaining an action for the damages occasioned by raising or lowering the highway. If they were not within the scope of his authority, he may be personally answerable; but we can discover no principle upon which the town is to be charged on account of those illegal acts.

In the case of *Benden* v. *Nashua*, decided in Hillsborough county, at the December term, 1845, substantially the same questions which are raised under the second count in this case came under the consideration of the court, and the principles recognized in that case are decisive of this under that count. There, the town having rebuilt a bridge across the Nashua river, considerably higher than the old bridge, the street was raised, by the selectmen acting as surveyors of highways, to correspond with the bridge immediately in front of the plaintiff's dwelling-house, which was situated close to the line of the street, thereby seriously injuring the estate, by causing the rain water to flow into the house, and also by creating an embankment immediately in front of it. This, being prior to the act of 1848, was held to furnish no ground of action in favor of the owner of the estate against the town. And in the reasoning of the court

upon the case, the decision was placed upon the ground that the town could not be held answerable for the acts of the surveyor; and, also, upon the ground that for such consequential damages as might result to the owner of the adjoining land from the improvements which the public accommodation required to be made in the highways, the compensation must be presumed to have been made in the award of damages for the land taken for the highway.

We do not understand, however, that the case of the plaintiff is placed, in the argument, so much upon the ground set out in the second count, as in the first and third. Here, the position is taken, that the damages sustained by the plaintiff have resulted from the neglect of the town to perform a duty imposed upon them by law, and that, for special damage happening in consequence of such neglect of duty, the suffering party may have his remedy against the town, independent of any statute provision to that effect. We are not prepared to say that there exists any sound reason for distinguishing, in the application of that principle, between the case of a town, or other corporation aggregate, occasioning special damage by the neglect of a duty expressly imposed upon them, if the duty be of such character that it may properly be considered as one owing to the party suffering from the neglect, and that of an individual occasioning such damage by a like neglect. The reasons assigned by the court for the decision in *Russell* v. *The Men of Devon,* 2 T. R. 667, cited on this point in the argument for the defendants, have no application to town corporations under our laws. That action was case against *the men dwelling in the county of Devon,* for an injury to the wagon of the plaintiff, in consequence of a bridge being out of repair, which ought to have been repaired by the county; to which *two* of the inhabitants, for themselves and the rest of the men dwelling in the county, appeared and demurred generally. Ld. *Kenyon,* Ch. J., said, the question was whether this body of men sued in the action were a corporation or *qua* a corporation against whom such an action could be maintained; that the attempt was to maintain it by borrowing the

rules of analogy from the statutes of hue and cry; but he thought those statutes proved the reverse — for the Legislature, when they gave the action against the hundred, by the statute of Winton, *converted the hundred into a corporation* for that very purpose — but if the county was to be considered a corporation, there was no corporate fund out of which satisfaction could be made. And *Ashhurst,* J., added, that if damages were recoverable at all against the county, they must be levied on one or two individuals who would have no means of reïmbursing themselves. The decision was in fact based upon the ground that the county was not a corporation, to sue or be sued. It is upon the authority of this case that the doctrine has become settled in Massachusetts, that no action at common law lies against towns, or other *quasi* corporations, although it has also become the settled doctrine of that State, that for special damage happening by reason of neglect of duty on the part of a proper corporation aggregate, the party suffering has his remedy by action. *Mower* v. *Leicester,* 9 Mass. 247 ; *Holman* v. *Townsend,* 13 Met. 297 ; *Riddle* v. *Locks,* 7 Mass. 169. The views entertained by the court upon other points in the case render it unnecessary, however, to give this question further consideration.

Assuming that the town may be held to answer for special damage resulting from their neglect of duty, at the suit of the party injured, what is the duty which, according to the allegations of the first and third counts, the defendants have been guilty of neglecting ? It is there alleged that they suffered and permitted the channel of the stream running along by the highway, and the culvert by which it was conducted across it to the river, to become filled and choked up, so that the water was thereby turned upon the plaintiff's premises. This contains no averment of a breach of duty. It does not amount to an allegation that the town suffered the highway to become insufficient and out of repair. Indeed, all may be true, as alleged in these counts, and yet the highway be in proper condition and repair for the purposes of travel upon it. But considering it, as it has been considered in the argument, as equivalent to an allegation that it was insuffi-

cient and out of repair, still it is the duty of towns to keep their highways in suitable repair only for the travel passing thereon, and it is only to the traveller, as such, that the duty can be said to be owing. Towns are, indeed, made liable to fine upon indictment for neglecting to repair, and in that respect they may be said to owe a duty to the public. But this duty is one to be enforced only by a public prosecution, upon an indictment or information. The private rights growing out of this duty, to be enforced by the suit of the party, are such as the traveller may have for his remedy when he suffers damage from a defect in the highway, in using or attempting to use it. The language of the statute is, that " in case any special damage shall happen to any person, *his team or carriage,* by reason of the want of repair of any highway, the person injured shall recover his damage in an action against the town." Rev. Stat., chap. 57, § 1. This has always been held from the time of the early and leading case on the subject, *Farnum* v. *Concord,* 2 N. H. 292, down to the present, as giving a remedy only for such injuries as may happen in the use of the highway, as such. *Brailey* v. *Southborough,* 6 Cush. 141 ; *Tisdale* v. *Norton,* 8 Met. 388. And for such as are the direct result of the defect as their proximate cause, and not for such as are consequential in their character. The course of legislation upon this subject would seem very clearly to indicate that such was the intention of the Legislature. By the provincial act of 1719, chap. 98, § 6, it was enacted that if through neglect in keeping in repair any highway, &c., any person should happen to lose his life in passing such highway, or lose limb, or break bone, or receive any bruise or breach in his body, through defect of the highway, the province or town to which it of right belonged to maintain the highway in repair, should pay to the parents, husband, wife, children, or next of kin, one hundred pounds, and for any other harm as aforesaid double the damages sustained, and should render like recompense for any carriage, cart, horse or other beast, harmed or lost, proportionable to the damage suffered. The terms of this act expressly limit the remedy to injuries to the person and to the carriage and team,

resulting directly from a use of the highway while "passing" thereon.

The next act upon the subject was that of 27th of February, 1786, entitled "An act for mending and repairing the highways in this State;" in which was enacted, in substance, the same provision which now exists upon our statute book, rendering towns liable for damages resulting from any defect in the highways within their limits; and, though not in express terms, as in the provincial act, confining the remedy to those "passing" upon the highway, yet manifestly implying such a limitation, by restricting it to cases of special damage happening "to any person, his *team or carriage*," thus expressing, in briefer terms, the same kind of injuries as those described more at length in the provincial act. Indeed, this act of 1786, with two other acts passed on the same day, one "to prevent encroachments upon highways," and the other "for laying out new highways," constituted a complete revision of all the laws on the subject of highways, and the object of this change of phraseology was manifestly not to enact new provisions in this particular, but to reënact the old in a more brief and comprehensive form.

At the subsequent revisions of the statutes, in 1829 and 1843, the provision was reënacted, and at each time in a form slightly modified, but manifestly aiming at nothing more than brevity in the expression.

In this case the attempt is made to extend the liability of towns for damages arising from defects in their highways beyond the limits prescribed for that liability in the enactments of the Legislature on that subject. The question is not, therefore, whether an action lies at common law against a public municipal corporation for damages occasioned by the neglect of a duty imposed upon such corporation, but whether, when the Legislature have enacted that they shall be answerable for the damages happening directly to a person, his team or carriage, through a defect in the highway while using it as such, that liability can be extended, without further action of the Legislature, to consequential damages, resulting indirectly from such defect, to his build-

ing or other property than his team or carriage, and that, too, when the highway is not being used as such. It is very clear that this cannot be done. There is no ground for disturbing the verdict, and

*Judgment must be entered thereon.*