## HOLDERNESS v. BAKER.

A town can maintain assumpsit for money had and received against one having in his hands money of the town, received by him while he was town treasurer.

If the defendant, as servant of the town, has received money as the money of the town, without prior authority to do so, the town may ratify his act, and after such ratification, as between the parties, such money will belong to the town.

In such case the mere fact that the money thus received was money borrowed by the defendant and others, as selectmen, on notes signed by them as notes of the town, "without any authority by vote of the town," or was the proceeds of certain taxes raised under an illegal vote, would fail to show any right of the defendant to retain the money as against the town.

An admission contained in a letter written by the defendant's counsel to an auditor to whom the case had been committed by the court, and before whom it was pending, made to be used by the auditor in making his report, is admissible against the defendant in a subsequent trial of the case by the jury.

Where the defendant had agreed with the auditors of the town, who were settling its accounts for the years in which he was selectman and treasurer, that A and B should ascertain the amount of the outstanding taxes for those years, and they did so, and stated it;—*Held*, that their statement of such amount, thus made, was admissible as against the defendant on the question as to the amount of such outstanding taxes, in the trial of an action brought against him by the town.

A selectman can not act for the town in making a loan of its money to himself.

Neither a town treasurer, nor one of a board of selectmen, merely as such and without authority in fact from the town, or derived from a majority of the board of selectmen, can bind the town by a loan of its money, or by a ratification of such a loan.

A party is not estopped to deny his ratification of an unauthorized act of an agent, by acts and conduct in no way inconsistent with such denial; and such acts and conduct are not a ratification.

THIS was an action of assumpsit upon the general counts, and upon an account annexed.

The specification embraced a large number of items, charged as money received by the defendant as treasurer of the town of Holderness. The set-off contained many charges of payments on account of the town. The defendant moved for a nonsuit, on the ground that the action should be a special action on the case, for the default or misconduct of the defendant in his office of treasurer of the town, under the Compiled Statutes (ch. 191, sec. 13); but the court denied the motion, and the defendant excepted.

The case had been referred to an auditor, who made his report, allowing certain items, and disallowing others in detail. The plaintiff put in evidence the report, and rested his case.

The defendant offered evidence tending to prove that certain large items, allowed by the auditor, against the defendant, were money borrowed by the defendant and others, as selectmen of Holderness, on notes signed by them as notes of the town, without any authority by vote of the town, and claimed that the town could not recover for the money so borrowed. But the court held that the treasurer, if he received the money as the money of the town, must, at their election, account for it as their money.

The auditor allowed against the defendant certain taxes assessed for the year 1857. The defendant offered to show that the vote of the town for raising money in that year was illegal, and so the defendant was not liable to the town for the taxes so assessed,

though they had come into his hands, but might be liable to the tax payers for the same; but the court rejected the evidence.

The plaintiff offered in evidence a letter from the defendant's counsel, Mr. Burrows, to the auditor, written in answer to a letter from him, after the hearing and before the decision, as proof tending to show what was the amount of taxes for which the defendant should be charged, and the court admitted the evidence.

The parties had leave to refer, at the argument, to the letter of the auditor to Mr. Hibbard, the plaintiffs' counsel, which was proved to be similar to his letter to Mr. Burrows, and to Mr. Burrows' letter to the auditor.

The plaintiffs offered J. F. Keyes as a witness, to prove what B. Hughes told him was the amount of the outstanding taxes for the years 1857 and 1858. Objection being made, the plaintiff laid before the court evidence tending to prove that in March, 1859, soon after the defendant went out of office, the town of Holderness appointed Mr. Keyes and two others a committee to audit the accounts of the town for the two preceding years; that a meeting of the auditors was held, at which the defendant was present a part of the time. The auditors proposed that B. Hughes, who was one of the selectmen, and Mr. York, the collector of taxes for those years, should ascertain the amount of the outstanding taxes. The defendant assented to the proposal, and they accordingly made the investigation, and stated the amount to Mr. Keyes. These facts were strenuously denied by the defendant, and the evidence was conflicting; but the court, being of opinion that the weight of evidence was in favor of the plaintiff, admitted the evidence.

The auditor did not allow the defendant his charges for certain money alleged to have been paid by him, for which Russell Cox had given his notes to the town. The evidence tended to prove that the town held a note against Coffin and Bishop, secured by a mortgage. In payment of a part of this note, two notes of John Smith, Jr., of $225 each, were taken by the defendant, dated July 4, 1857, one payable October 14, 1857, and the other one year after. On the 7th of July, 1857, John Smith, Jr., brought to the defendant the note of R. Cox, who was then one of the selectmen of the town, and in undoubted good credit as to property, bearing that date, written payable to the town of Holderness, and proposed to him to take this note, and indorse the amount on his (Smith's) note, payable in October following. The defendant in good faith accepted the note, indorsed the amount on Smith's note, and placed Cox's note among the town securities, where it has ever since remained. On the 29th of March, 1859, after the defendant was out of office, B. Hughes, the town treasurer for that year, settled a bill presented by R. Cox against the town, for $303.50, and gave up to him his receipt, given to the defendant while treasurer, for $200, advanced to him to pay for repairs of the pier of the bridge near Plymouth village, and indorsed on this note of $155 the sum of $111.96.

On the 20th of August, 1857, the defendant advanced to Mr. Cox the sum of $150, for which he took Cox's note, payable to himself

as treasurer of the town.  This sum, it was argued, was placed by the defendant in the hands of Mr. Cox, as one of the selectmen, for the payment of claims which should be presented to him, and were proper to be paid, and the note taken only as a convenient voucher, in adjusting the business afterward.

It appeared that early in September, 1857, a meeting and consultation was had of the selectmen of Plymouth and Holderness, relative to repairing the pier of the bridge near Plymouth village, and Mr. Cox, who lived in the neighborhood, was appointed by the other selectmen to superintend these repairs on the part of Holderness.  The expense was estimated to exceed $1,000, and contracts were shortly after made for the work, and the repairs were commenced.  On the 1st of October, 1857, the defendant advanced to Mr. Cox $135, and on the 15th of October, 1857, $100, for which he took Mr. Cox's notes of those dates, payable to himself, or to himself as treasurer, and on the 27th of October, 1857, the sum of $200, for which he took said Cox's receipt, purporting to be "to pay bills for repairing bridge near Plymouth," which is the same before referred to as given up to Mr. Cox, March 29, 1859.  The evidence tended to prove that the money was advanced upon the two last notes, for paying the repairs on the bridge, and the notes were taken upon Mr. Cox's suggestion that it would be as well to take notes.  Mr. Cox was in good credit until December, 1857, when he failed.

On the 8th of March, 1858, Mr. Cox presented and was allowed his bill against the town, for his services as selectman, amounting to $60, which was paid by discharging his taxes, amounting to $16.81, and the balance, $43.19, was indorsed on the $100 note.

By the failure of Mr. Cox these notes were lost, and the town contended that these advances were an unauthorized loan of the money of the town, by the defendant as treasurer, and any loss accruing from such a transaction must be borne by him; while the defendant contended that as the financial agent of the town, according to the usual course of business in that and other towns, he was authorized to make such change of securities as was done in the case of the $155 note, and to make such advances to his co-selectman.  Upon all these matters there was a conflict of evidence, and the whole matter was submitted to the jury.

It appeared that after the property of Mr. Cox had been attached by his creditors, he directed an action to be brought against himself, in the name of the town of Holderness, and an attachment to be made, which was done.  The action was subsequently entered in court, an appearance entered, a specification filed, and at the third term a default entered, but no judgment has been in fact entered, the notes not being under the control of the attorney, and the property attached being insufficient to satisfy the earlier attachments, so that nothing was ever realized from the suit.

On the day after the failure of Mr. Cox, Mr. Baker, the defendant, went to Plymouth, learned what had been done, and took from Mr. Cox notes payable to the town of Holderness, in exchange for some or all of the notes which were before payable to himself, or

to himself as treasurer, and gave up the original notes to Mr. Cox. The evidence tended to prove that the defendant at that time assented to the act of Cox in having the action brought, and subsequently furnished Mr. Leverett, the attorney who brought the action, with copies of all the Cox notes payable to the town, to enable him to furnish the specification aforesaid. Both Cox and the defendant were selectmen at that time.

During the next year Mr. Hughes, being then one of the selectmen of Holderness, casually saw Mr. Leverett, the attorney who brought the suit against Cox, and asked him to inquire if J. R. Clark had not in his hands certain notes belonging to Mr. Cox which might be held on a trustee process for the benefit of Holderness, but no such action was brought.

It was contended by the defendant that these acts were a ratification of the Cox notes by the town. The court instructed the jury that if Baker and Cox were authorized to bind the town by the original transaction, there was no question about a ratification. If they had no authority to bind the town originally, they had no authority to bind it by ratification; so that the claim of the defendant to be allowed for these notes must depend on the validity of the original transaction.

The evidence tended to prove that all the Cox notes remained in the possession and under the control of the town from the time the defendant ceased to be selectman and treasurer of the town, until the trial of this cause, and Baker exercised no control over them.

The court also stated to the jury that the acts of Hughes alone the next year, in relation to J. R. Clark, did not amount to a ratification.

The defendant took exception to all these rulings and instructions. The jury found a verdict for the plaintiff, which the defendant moved to set aside on account of said exceptions.

*Hibbard,* and *Pike & Barnard,* for the plaintiff.

*Burrows & Ela,* for the defendant.

BARTLETT, J.* This action is brought, not for damages arising from any official default or misconduct of the defendant, but simply to recover money of the plaintiff, which was received by the defendant while he was treasurer of the town, and which still remains in his hands. It is therefore unnecessary to inquire what may be the true construction of the 12th section, chapter 180, of the Revised Statutes. If the defendant, as servant of the town, received money as the town's, even if he had no prior authority to do so, the town might ratify his act; *Backman* v. *Charlestown,* 42 N. H. 136; and has ratified it by bringing the present suit; Story on Agency, sec. 259; for towns are "subject to the same implications from their corporate acts, or the acts of their agents within the scope of their authority, without either vote, deed, or writing, as in the case of natural persons." *Glidden* v. *Unity,* 33 N. H. 577. After such a

* BELLOWS, J., having been of counsel, did not sit.

ratification, as between the defendant and the town, the money so received would belong to the latter. Story on Agency, sec. 217; 2 Stark. Ev. 95. In such case evidence that money so received was money borrowed by the defendant and others as selectmen of Holderness, on notes signed by them as notes of the town, "without any authority by vote of the town," or was the proceeds of certain taxes raised under an illegal vote, would fail to show any right of the defendant to retain the money as against the plaintiff. *Johnson* v. *Goodridge*, 3 Shep. 29.

The letter of the defendant's counsel was properly received as evidence of the amount of certain taxes for which it was claimed the defendant was chargeable. Although written after the auditor's hearing, it was before his decision and in answer to a letter of inquiry from the auditor to the counsel on both sides, it stated the amount of taxes for which the defendant was chargeable, "if his objections, taken on the first hearing, did not prevail." In substance, it does not stand otherwise than it would if the counsel at the hearing had admitted that the defendant was liable for that amount, if by law he was liable at all in this action; for the admissions were made before the decision by the auditor, and for his use in making the decision. 1 Greenl. Ev., sec. 186; *Lewis* v. *Sumner*, 13 Met. 273; *Witherell* v. *Bird*, 7 C. & P. 6.

The plaintiff was properly allowed to show the determination of the amount of outstanding taxes made by Hughes and York, under the agreement between the auditors of the town and the defendant. *Smith* v. *B., C. & M. Railroad*, 36 N. H. 492.

Cox, as selectman, could not act for the town in making a loan of its money to himself; Story on Agency, sec. 210, 211; and the questions whether the transaction was a loan, and whether the defendant had in fact the authority he claimed, were, upon the conflicting evidence, properly submitted to the jury, since, where the evidence was conflicting, the court could not, as a matter of law, pronounce the transaction not a loan, nor could they say that the defendant had the authority he claimed. *Burbank* v. *Piermont*, 44 N. H. 43; *French* v. *Benton*, 44 N. H. 28. No exception was taken to the instructions of the court in submitting these questions to the jury. If the original transactions were authorized, they were valid, and the question of ratification was immaterial; and the instructions of the court that if Baker and Cox had no authority to bind the town originally, they had no authority to bind it by a ratification, were correct, for there was no evidence of any subsequent additional authority. We think that neither a town treasurer nor one of a board of selectmen, merely as such, and without authority in fact from the town, or derived from a majority of the board of selectmen, can bind the town by a loan of its money; *Burbank* v. *Piermont;* or consequently by ratification of such a loan. The defendant, as treasurer of the town, took the notes from Cox, and suffered them to remain in the possession of the town, that is, of its officers, after his term of service expired. Under the circumstances, we do not think that the mere facts that these notes remained "in the possession and under the control of the town from

the time the defendant ceased to be selectman and treasurer of the town" until the time of trial, and that "Baker exercised no control over them," show a ratification of his transactions by the town, or estop it from denying such a ratification; for these facts under the circumstances show nothing upon the part of the town inconsistent with a refusal to ratify the original transaction; *Lee* v. *Lamprey*, 43 N. H. 11; *Hazelton* v. *Batchelder*, 44 N. H. 40; *Norris* v. *Morrill*, 43 N. H. 218; nor can any additional force be given to these facts by any unauthorized acts of officers of the town. There must, therefore, be

<div align="right">

*Judgment on the verdict.*