IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF CUMBERLAND.

ARGUED AT APRIL TERM, 1849.

INHABITANTS OF HARPSWELL *versus* INHABITANTS OF PHIPS-
BURG.

29 313
93 188

An omission of the presiding Judge to charge the jury in relation to certain principles, not then brought to his consideration, and no request being made for such instruction, forms no ground of exception.

It is within the scope of the official powers of overseers of the poor, to adjust and pay claims against their town, made for supporting any of their paupers by another town.

In an action by one town against another, for the expense of a pauper, whose settlement is contested, evidence of a former suit, for previous expenses of the same pauper and of payment of the same by the overseers of the defendant town, is admissible.

ASSUMPSIT, for the support of one Sarah Alexander, alleged to be a pauper, and to have a legal settlement in Phipsburg.

It appeared that she went from her father's in Harpswell, about Sept. 22, 1834, to reside as a domestic servant in the family of one Batchelder in Phipsburg, and continued to reside there and work by the year, (excepting that in the fall and spring of each year, she went to her father's, as she said, on visits and staid two or three weeks at a time,) until she left during the month of February, 1842, and returned to her

father's in Harpswell. She became 21 years of age on the 31st of August, 1836.

A former suit had been commenced by the plaintiffs against the defendants to recover for expenses incurred in 1842, for the support of said Sarah. The plaintiffs offered a bill of the expenses sued for in the former action, and evidence that the same was paid by the overseers of Phipsburg, which was objected to, but admitted.

The counsel for the defendants, in argument to the jury, contended that the contracts and engagements of Sarah to work with Mrs. Batchelder, being contracts from year to year, and terminating with each year, and settlements taking place each year and she returning to Harpswell at the termination of several of the years, did not constitute a continued residence of five years after she became of age, sufficient to gain her a new settlement in Phipsburg, and that, in order to give her such new settlement, she should have had a right to return and live with Mrs. Batchelder, under contract or otherwise, which could not be interfered with.

No request was made to the Court to give any specific instructions, and Shepley, C. J. instructed the jury, that, although it appeared that the alleged pauper did not reside in Phipsburg for all the days or weeks of five years together, yet, if satisfied that she resided there with the intention of making that her established residence and home, and that, when she left that place and went to Harpswell, she did so on visits only, to her father's, with an intention to return; such occasional absences from Phipsburg would not prevent that town from being considered her residence for five years together. That the burden of proof was upon the plaintiffs to satisfy them that she had, after becoming 21 years of age, resided in Phipsburg with the intention to make that her established place of residence and home for five years together, without receiving supplies from any town as a pauper. The law respecting residence and intention, was also explained and illustrated.

A verdict was rendered for the plaintiffs, and exceptions taken.

*Fessenden, Deblois & Fessenden*, for defendants, main-

tained the position they took before the jury, and cited, *Billerica* v. *Chelmsford*, 10 Mass. 394; *Hampden* v. *Fairfield*, 3 Greenl. 436; *Knox* v. *Waldoboro'*, 3 Greenl. 455; *Parsonsfield* v. *Kennebunk*, 4 Greenl. 47; *Turner* v. *Buckfield*, 3 Greenl. 229. And to the point that the admission of the settled account was wrong, *Northfield* v. *Taunton*, 4 Metc. 433; *Peru* v. *Turner*, 10 Maine, 185; *Northfield* v. *Exeter*, 4 Metc. 433.

*W. P. Fessenden*, for plaintiffs.

WELLS, J. — This was an action to recover expenses incurred for the support of Sarah Alexander, a pauper, whose legal settlement was alleged to be in Phipsburg.

No request having been made to the Judge, presiding at the trial, to charge the jury in any particular manner, an omission to do so in relation to certain principles, not then brought to his consideration, forms no ground of exception. If in the judgment of a party, the Judge omits to give appropriate instructions, his attention must be called to them, before any objection can be taken to the alleged omission.

It may often happen, upon subsequent examination, after a verdict has been rendered, that a party will be able to discover, that instructions, more appropriate and fit than those given, could have been presented to the jury. But if such subsequent discoveries were just cause of objection to a verdict, it might be difficult to sustain any, that could be rendered.

But we do not perceive in the present case, any want of appropriate instructions.

It is not contended, that those which were given, are erroneous.

But it is denied by the defendants, that the admission of the evidence of a former suit by the plaintiffs against them, and the settlement of what was claimed in that suit for the support of the pauper, was properly received. The settlement was made on the part of the defendants, by two of its overseers.

What is done by the officers of a town, within the scope of

their authority, must necessarily affect the town in the same manner as if done by the town itself.

As where a person is taxed, or his name is entered on the list of voters, and he is allowed to vote, it is evidence of residence where he is so taxed or votes, not conclusive, but its weight and effect are to be determined by the jury. *Westbrook* v. *Bowdoinham*, 7 Greenl. 363.

Overseers of the poor have the care and oversight of paupers. They are empowered by statute c. 32, § 52, to prosecute and defend actions relating to the same. Nothing is said in this section concerning the settlement of actions. And we must look to other portions of the statute, to ascertain whether they possess such power.

They have authority to create expense and do acts, as much affecting the interests of the town, as the settlement of an action, brought for supplies furnished a pauper, whose settlement is alleged to be in their town.

Upon notice that a pauper, whose settlement is supposed to be in their town, has become chargeable to another town, they may cause his removal to their own town and provide for his support.

And if such removal is not affected, and they neglect to answer the notice within two months, their town is barred from contesting the settlement of the pauper, with the town giving the notice, and is bound to receive and provide for him.

So too when persons fall into distress, they are required to provide for them, and if their settlement is in another town, to give notice to such town. The powers, with which overseers are clothed, require an exercise of judgment, by which they may charge their towns with the support of paupers.

The payment of expenses, when claimed for supplies furnished to a pauper, whose settlement they believed to be in their town, would be no greater exercise of power, than the removal of such pauper to their town and furnishing him with support. If they may incur future, why not be permitted to discharge past, expenses for the same pauper? It may therefore be fairly inferred from the powers and duties of overseers,

that they are authorized to pay expenses incurred for the support of one of their paupers by another town, when their town, in their judgment, is liable by law for such expenses. And the power to pay the expenses would embrace that of settling an action commenced to recover them. *Belfast* v. *Leominster*, 1 Pick. 123. The evidence of the settlement and payment, in its effect, is like an admission, that at that time and according to the circumstances then developed, the settlement of the pauper was then in Phipsburg. But it was admitted as evidence only, not as conclusive, and was open to explanation on the part of the defendants, who would have been permitted to show, if they could, that the overseers acted under an entire misapprehension as to the facts. It was not a mere declaration made by an overseer, as was the case in *Corinna* v. *Exeter*, 13 Maine, 321, but an act done by two of the overseers. And all that was decided in *Peru* v. *Turner*, 1 Fairf. 185, was, that the note signed by the overseers of Peru, and which contained an admission, that the pauper was chargeable to Peru, was not conclusive by way of estoppel. The question made in that case was upon the effect, and not upon the admissibility of the evidence.

*Judgment on the verdict.*