### Grimes *v.* Keene.

In an action against a town to recover for an injury to a carriage caused by a defective highway, it is competent for the plaintiff to prove payment, by the town, of damages for injuries caused by the same accident to a passenger in the carriage.

The doctrine of *Coffin* v. *Plymouth*, 49 N. H. 173, affirmed.

The town of Keene were authorized to dig up their highways for the purpose of establishing and maintaining water-works. Their superintendent of water-works dug a hole in a street, in searching for a leak in a water-pipe. *Held*, that he acted not as a public officer, but as a servant of the town, and that, his act being within the scope of his employment, the town were liable for an injury caused by his negligence.

CASE, by Augustus Grimes against the town of Keene, to recover damages for an injury to the plaintiff's carriage, alleged to have been occasioned by a defect in a highway called Church street, in Keene, March 18, 1871.

On the morning of that day, Daniel H. Holbrook, superintendent of the Keene water-works, with two assistants, went to a point in said street, where it crosses Beaver brook, to search for a leak in the water-pipe supposed to exist near that place. Immediately west of the bridge, within the travelled part of the street, they dug a hole, of very considerable depth and size. At a point some thirty-five feet further west, they dug another hole, twelve or fifteen inches deep and wide, and some five feet in length, over the pipe, also within the travelled part of the way, running lengthwise. These excavations were on the southerly side of the travelled part of the street, and sufficient room was left unobstructed on the northerly side for teams and carriages to pass without driving into them. After this had been done, Mr. Holbrook went away for a short time to open the gate and let the water into the pipe, and his assistants went to the larger hole at the bridge.

While things were so situated, the plaintiff's servant, driving a hack with two horses attached, came down from Main street, going easterly at a moderate trot, and when he reached the first excavation, the off wheels of the carriage went into it, whereby the spring holding the forward wheels in place was broken. The horses thereupon became frightened and ran, and the carriage was demolished. At the time of the accident there was one passenger in the carriage, who received bodily injury. Subject to the defendants' exception, the court permitted the plaintiff to prove that the selectmen had settled with that passenger, and paid her money as satisfaction and discharge of her claim for damages. The accident happened at a few minutes past nine o'clock A. M.

The act of July 3, 1861, enabling the town of Keene to establish and maintain water-works, gives to the town the right to dig up their highways for that purpose, " due regard being had to the safety of the citizens and the security of public travel." The whole of said act may be referred to as part of this case.

The court instructed the jury that the plaintiff could not recover, unless there was fault or negligence on the part of the town,—that is, unless there was a defect or obstruction in the highway which the town, under all the circumstances shown, ought to have remedied before the accident ; but that want of ordinary care, on the part of the super-intendent of the water-works, in making the excavations, or in the means used by him to warn and secure travellers against accident by reason of what he had done in the street, would constitute fault or negligence on the part of the town, for which they might be liable in this action. To the latter part of these instructions the defendants excepted.

The jury returned a verdict for the plaintiff, which the defendants moved to set aside for error in the above ruling and instructions.

The case was reserved.

*Cushing, Woodward & Wellington,* for the plaintiff.

*Wheeler & Faulkner,* for the defendants.

1. The evidence that the selectmen had settled with the passenger in the plaintiff's carriage, and paid her money as satisfaction and discharge of her claim for damages, was incompetent.

It was *res inter alios acta.* If admissible upon any ground, it must be upon the ground that it tended to show an admission to a third person of liability to the plaintiff. If evidence of an offer to pay the plaintiff a certain sum to settle the claim had been offered, it would have been rejected. Can the defendants be placed in a worse position because a similar offer was made to a third person? And if such offer, so made, is not evidence tending to show an admission of liability, can it be made such by the act of that third person in accepting it? Can that which was not an admission, or evidence of an admission, by the party sought to be charged, be made such by the act of a third person? Can the character of his act be changed without or against his will?

We are aware that there are two comparatively recent cases in this State which would seem to sustain the ruling of the court admitting this evidence—*Perkins* v. *Concord Railroad,* 44 N. H. 223, and *Coffin* v. *Plymouth,* 49 N. H. 173 ; but, inasmuch as in the latter case the opinion is stated to be that of a majority of the court, indicating that some of the members did not concur, and in the former great stress is placed in the opinion upon a fact which does not appear in the case as stated, viz., that " the liability to pay damages in consequence of the accident appears to have been the matter distinctly admitted to the witness, as stated by him in evidence ;"—as none of the cases cited sustain the opinion of the court, and, inasmuch as the doctrine there announced is believed to be at variance with the views of the profession generally, and the uniform practice of our courts for the last forty years, we are induced in this case respectfully to ask the court to reconsider the question.

In some of the text-books, the doctrine, that an offer to pay money in compromise of a claim cannot be received in evidence, is stated with the qualification that " it should be expressly stated to be made confidentially or without prejudice"—1 Greenl. Ev. 192 ; 2 Starkie's Ev. 27 ; but a careful examination of the authorities cited shows that they utterly fail to support the text. *Wallace* v. *Small,* 1 M. & M. 446 ; *Thompson* v. *Austen,* 2 Dowl. & Ry. 358 ; *Hill* v. *Elliott,* 5 C. & P. 436. In each of these cases, in addition to the offer of money in compromise, there was the distinct admission of an independent fact tending to show liability. There is nothing in any of these cases tending to qualify the general doctrine, that an offer to pay a sum of money by way of compromise of a pending controversy cannot be received in evidence against the party making it, upon the ground that " it must be permitted to men to buy their peace without regard to the question whether anything is due or not;" but an independent fact, admitted

during the treaty of compromise, may be given in evidence as a confession. In fact, the point mainly discussed in the earlier cases has been, whether or not *any* admission made during the pendency of a treaty can be admitted as evidence; and the result of that discussion has been stated and recognized in the following cases in this State and Massachusetts : *Sanborn* v. *Neilson,* 4 N. H. 501 ; *Hamblett* v. *Hamblett,* 6 N. H. 343 ; *Downer* v. *Button,* 26 N. H. 338 ; *Bartlett* v. *Hoyt,* 33 N. H. 151 ; *Mussey* v. *Holt,* 24 N. H. 248 ; *Eastman* v. *Company,* 44 N. H. 143 ; *Marsh* v. *Gold,* 2 Pick. 284 ; *Gerrish* v. *Sweetser,* 4 Pick. 374 ; *Dickinson* v. *Dickinson,* 9 Met. 471 ; *Harrington* v. *Lincoln,* 4 Gray 563 ; *Emerson* v. *Boynton,* 11 Gray 395. To the same effect, see, also, *Wayman* v. *Hilliard,* 7 Bing. 101.

In *Sanborn* v. *Neilson,* Chief Justice RICHARDSON says,—" The reason why a mere offer of money, or other thing, by way of compromise, is not to be evidence against him who makes it, is very plain, and easily understood : such an offer neither admits nor ascertains any debt, and is no more than saying that so much will be given to be rid of the controversy." And, in *Hamblett* v. *Hamblett,* PARKER, J., says that the soundness of the *obiter dictum,* in *Wallace* v. *Small,* that an offer of a specific sum by way of compromise will not be privileged, unless accompanied by a caution that it is confidential, " may well be doubted."

2. The ruling of the court was, in effect, that any want of ordinary care on the part of the superintendent would, of itself, constitute fault or negligence on the part of the town. Assuming that, as superintendent, he was the officer and agent of the town, it by no means follows that in all his acts he was the agent of the town, or that the town would be responsible for all acts performed by him. For the consequences of his acts in the direct line of his official duty the town might be liable, but for acts outside of his duty they would be no more responsible than for those of any other person. The attempt here is to charge the town for the wrongful act of a person who held a certain office in the town. If they are so chargeable, it must be for some reason not applicable to the wrongful acts of any other town officer. For the wrongful acts of the town-clerk, or overseer of the poor, in relation to their highways, it will not be claimed that a town would be liable, without proof of neglect on their part; and, if a selectman should temporarily encumber a highway and damage should ensue, the town would not be liable because the wrong-doer was an officer of the town.

The superintendent of the water-works was charged with no duties in regard to the repair of highways. If, in the execution of his duty in repairing the aqueduct, he rendered the highway defective, it was his own wrongful or negligent act, for which he is liable, and not the town, unless they are made so by the statute. The liability of the town rests precisely upon the ground upon which the statute, as construed by the court, has put it : they are liable if, under the circumstances, they should have remedied the defect before the accident happened ; and the jury should have been so instructed.

BELLOWS, C. J. The proof of the payment of damages to the passenger for injuries caused by the same accident was admissible, if the doctrine of *Perkins* v. *Concord Railroad*, 44 N. H. 225, and *Coffin* v. *Plymouth*, 49 N. H. 173, is sustained.

The proof was received on the ground that it was an admission, more or less strong, that the highway, at the point in question, was defective, and the town in fault for its being so. Such an admission was necessarily to be implied from the acknowledgment and payment of the passenger's claim, for without the existence of this defect there could have been no claim.

It is urged that the doctrine of the cases cited is unsound, because the payment of the claims was by way of compromise, and therefore not admissible in evidence.

In respect to *Coffin* v. *Plymouth*, it did appear that when the selectmen paid Clark, whose wagon was injured at the same accident, one of the selectmen denied the liability of the town; and it was on this ground that one or more of the court dissented. But in the case before us there was no such denial, nor does anything appear that affords an inference that this payment was matter of compromise. On the contrary, it is the simple case of a claim made, and a yielding to it, and payment by the town. The question, therefore, raised by the counsel does not arise here, and if it did, it would seem to be settled by *Coffin* v. *Plymouth*.

The general question here raised is substantially the same as in settlement cases, where the settlement of a person is in question, under whom the pauper is supposed to derive a settlement; and in such cases, it is well settled in New Hampshire, and elsewhere, that it is competent to prove that the town sought to be charged have supported other paupers deriving a settlement under the same person.

This is the doctrine of *Hopkinton* v. *Springfield*, 12 N. H. 328; *Pittsfield* v. *Barnstead*, 40 N. H. 495; *Canaan* v. *Hanover*, 47 N. H. 215; and *Harpswell* v. *Phipsburg*, 29 Me. 313. In these cases the question is, whether the pauper had a settlement in the town sought to be charged; and proof that the town admitted the settlement of the person under whom the pauper claims, by paying for the support of another claiming under the same person, is substantially the same as the admission of the defect in the highway by paying the claim of another person who was injured by it. There are many other illustrations of the same doctrine, as where the question is whether A is jointly liable with B for a debt incurred in a particular business: proof that A has paid to other persons debts contracted in the same business is constantly admitted, as in cases of alleged partnership, agency, and the like;—and the case before us stands in principle upon the same footing.

The remaining question respects the instructions given to the jury. They were told that the plaintiff could not recover unless there was fault or negligence on the part of the town,—that is, unless there was a defect or obstruction in the highway, which the town, under all the circumstances shown, ought to have remedied before the accident. So

far the instructions were clearly right, and, as we understand it, there was no exception to them.

The other part of the instruction went upon the ground that the fault or want of care of the superintendent of the water-works was the fault or negligence of the town. If it was so, the instructions were right. It is not contended that Holbrook was a public officer, clothed by law with certain powers in respect to these water-works that would bring him within the doctrine of *Ball* v. *Winchester*, 32 N. H. 440 ; and we think that such a view could not be sustained.

The act of July 3, 1861, under which these water-works were established, authorizes the town to place these works under the direction of a superintendent, or a board of water commissioners, or of both,— their duties to be defined by vote of the town. The powers and authority of the superintendent are not confirmed or defined by law, but by the town ; and he is in no sense a public officer within the meaning ascribed to that term in *Ball* v. *Winchester*, but he is the servant and agent of the town, and subject to their control. His act, then, within the scope of his employment, is the act of the town. A master is responsible to third persons for the negligence of his servants, in the course of their employment as such, to the same extent as if the act were his own. Shearman & Red. on Neg., sec. 59, notes and cases ; *ib.* secs. 60 to 67. In *Wilson* v. *Peverly*, 2 N. H. 549, it is laid down by WOODBURY, J., that a master is liable for wrongs done by his servant in the negligent and unskilful execution of business specially entrusted to him, on the ground that the master should not do an act, or cause it to be done, with such negligence as to injure third persons. The negligence and want of care of the servant may well be considered as the negligence and want of care of the town ; and that being so, the question is, whether, if the highway is made defective by the negligence and want of care of the town themselves in digging a ditch in it, the town are not at once liable to persons who are injured by such defect, and whether it is not a defect that ought to have been remedied.

In such a case, the defect, if it be one, is caused by the fault of the town, by neglect and want of care that constitutes a breach of duty, and brings the case within the principle of *Hubbard* v. *Concord*, 35 N. H. 68,—that is, it makes a defect in the highway, the existence of which at the time of the accident is due to the fault of the town, the result of a failure to do their duty ; and it is totally immaterial whether this failure be the omission to remedy the defect seasonably, or to exercise due care in digging and securing a ditch, in consequence of which fault the ditch becomes at once a defect. In both cases, the defect exists by the fault or breach of duty of the town ; and it would be very unreasonable to say, in respect to the defect caused by the town themselves, that they were not liable for injuries happening before there was time to remedy it,—and such is not the doctrine of *Hubbard* v. *Concord*.

It is very true that, for acts of the superintendent outside of his duty as servant of the town, the defendants are not liable ; and so far, the

counsel is right ;—but here the servant was clearly engaged in the service of the town, that is, in searching for a leak in the water-pipe ; and if in digging ditches for that purpose he failed to use ordinary care, and so caused a defect in the highway, the master is answerable. It is the common case of negligence of a servant, while about his master's business, for which the master is liable.

Since these views were prepared, I find them to be sustained in *Brooks* v. *Somerville*, 106 Mass. 274.

*Judgment on the verdict.*