EASTMAN v. HAMPSTEAD.

A committee chosen by a town to select and purchase a lot for a cemetery performed the duty assigned them, and made their report, which was accepted by the town. It was afterwards ascertained that a portion of the lot so located lay within twenty rods of a dwelling-house, and so could not be used for that purpose by reason of the statute. *Held*, that the committee might still, by virtue of their original appointment, purchase from the owner of the dwelling-house the right to locate the cemetery within twenty rods thereof.

ASSUMPSIT, to recover $100 and interest from the date of the writ. Facts found by the court. March 29, 1888, under a proper article in the warrant for that purpose, the town of Hampstead voted to purchase a lot of land for a cemetery in the centre of the town, and chose a committee, consisting of the plaintiff and four others, "to select and purchase a lot for the same." Also voted "to raise a sum not to exceed $800 to purchase a cemetery." At an adjourned meeting, held April 21, 1888, the committee reported

that they had located and purchased a lot containing a little over four acres for the purpose, for $100 per acre, describing its location, etc.   The purchase of the lot was thereupon completed, and the deed delivered to the town.   At a town-meeting, held May 12, 1888, under a proper article in the warrant for the purpose, the town voted that "the selectmen be instructed to lay out the new cemetery in lots, and sell at auction the choice of lots," etc.

In August, 1888, the selectmen went upon the land with a surveyor to lay out the cemetery into lots.   Across the highway, on land owned by Charles W. Pressey, one of the cemetery committee, was a dwelling-house occupied by George Wyman.   Wyman had a contract with Pressey for the purchase of the house and land, and objected to the laying out of the cemetery within twenty rods of it.   At this time Pressey notified the selectmen of Wyman's objection, and informed them that he should not consent to the laying out of the cemetery within twenty rods of the house. It did not occur to the committee, when they purchased the land, that the statute prohibited the use of any part of it for a cemetery, nor did Pressey, who was a member of the committee, then intimate that he should object to the use of a portion of it for that purpose.

When the objection was made, a discussion followed as to the law and the advisability of laying out lots within twenty rods of the dwelling-house.   The plaintiff, who was present, advised laying out the lots as had been designed, and expressed the opinion that permission to do so could undoubtedly be purchased of Wyman, and the town would approve and pay for it.   The selectmen, after consulting together, directed the surveyor not to lay out any lots nearer the dwelling-house than twenty rods; and they were laid out accordingly.

The plaintiff subsequently purchased of Pressey and Wyman the right to lay out the cemetery within ten rods of the dwelling-house, paying therefor the sum of one hundred dollars, and received from Pressey and Wyman a release as follows, which he delivered to the selectmen: "Whereas, land for a cemetery has been purchased and located by the town of Hampstead on the road leading from William Cobb's to Sandown, near buildings now occupied by the family of George Wyman, and upon land owned by Charles W. Pressey; inasmuch as the law of the state of New Hampshire provides that no cemetery shall be located within twenty rods of any building without consent of owners, therefore, for and in consideration of the sum of one hundred dollars, to us in hand, before the delivery hereof, well and truly paid by Josiah C. Eastman of Hampstead for said town, we have waived all our objections and relinquished all our rights under the law, except to reserve ten rods from the cemetery to buildings, instead of twenty rods."

At meetings held November 6, 1888, and March 12, 1889, the town refused by vote to pay the plaintiff the sum so paid by him for the above release.

The purchase of the right to lay out the cemetery within ten rods of the dwelling-house was reasonable, and made in good faith by the plaintiff, with the approval of the members of the cemetery committee. If the committee were authorized to buy the right at the time the plaintiff made the purchase, the court finds for the plaintiff. The plaintiff urged the selectmen to obtain it, and they knew he proposed to purchase it, and did not object; but having doubts as to their authority, they did not undertake to give the plaintiff any authority to act for them or for the town in the matter. They wanted to secure the right, and all the parties were of the opinion that the town would approve of the purchase and vote the money.

After the release was obtained, the selectmen laid out the lots to within ten rods of the house, supposing they could properly do so. They did not understand that their action was a ratification by the town of the plaintiff's purchase. After the town refused to pay the plaintiff's claim, he requested the chairman of the board of selectmen to deliver up to him the release, which the chairman refused to do, saying that the selectmen might need it for their protection.

*Marston & Eastman*, for the plaintiff.

*C. H. Knight*, for the defendants.

SMITH, J. The vote authorizing the committee to select and purchase a lot for a cemetery, means authority to purchase a lot which could be so used. A cemetery cannot be laid out within twenty rods of a "dwelling-house, store, or other place of business," without the consent of the owner of the same. G. L., c. 49, s. 2. So much of the land purchased by the committee as was situated within twenty rods of the dwelling-house owned by Pressey was unavailable for the purpose for which it had been bought, unless his consent could be obtained. The committee had authority to purchase his consent, if it was exercised seasonably; and the only question is, whether their authority as a committee had expired September 15, 1888. The purchase from Cobb was consummated, the deed taken, and the consideration paid, after the committee had made their report to the town, and between April 21 and May 12. The vote instructing the selectmen to lay out the new cemetery into lots, and to sell at auction the choice of as many lots as they should see fit, did not impose upon them duties which would bring them in conflict with the purchasing committee. There was no vote discharging the committee; and a purpose on the part of the town that the committee should not complete their unfinished labors does not appear from the action of the town in view of the circumstances as they existed. On the contrary, it may reasonably be inferred that the town expected the

committee to do, within the scope of their authority, whatever was necessary to render the land purchased available for the purposes of a cemetery.

It is argued that Pressey was estopped to withhold his consent to the use of the land for a cemetery, and therefore that the release was without consideration. This objection is not tenable. Wyman had a contract for the purchase of the Pressey land, and was the equitable owner. It was Wyman, and not Pressey, who objected. It does not appear that he paid him any less for the land, and it is fair to infer that the money paid for the release was paid to Wyman. There was no estoppel.

The plaintiff is entitled to judgment for $100 and interest from the date of the writ.

*Case discharged.*

CLARK, J., did not sit: the others concurred.