Belknap, }
Dec., 1899. }

## RHOBIDAS v. CONCORD.

A municipal corporation is liable at common law for injuries to private rights resulting from the negligent performance of a public duty by agents and servants whom it has the power to direct and control.

A board of water commissioners established by city ordinance, pursuant to authority conferred by an act of the legislature, are agents and servants of the municipality, and not independent officers whose acts the city cannot control or regulate.

Where a water precinct embracing a portion of a city has been established by ordinance, commissioners elected by the city councils and entrusted with the management of the water-works are officers of the city and not of the precinct.

CASE, for personal injuries, alleged to have been caused by the defendants' negligence while the plaintiff was employed as a servant in their water-works department. The defendants pleaded specially that they are a municipal corporation maintaining the water-works solely for fire purpose and for the benefit of their citizens, without profit to the city; that by virtue of an ordinance of the city, passed under authority of an act of the legislature, the sole control and management of the water-works is vested in a board of commissioners whom the city cannot direct or control in the discharge of their duties, and who are not the city's agents; that under the authority of said act the city established a water precinct, which includes only a portion of the city and is a *quasi* municipal corporation, in which and in the water-works maintained thereby the defendants have no interest except in a purely governmental or legislative capacity. The plaintiff demurred.

*Walter S. Peaslee* and *E. A. & C. B. Hibbard*, for the plaintiff. The plaintiff's position is that his injuries were not caused by the

omission of the defendants to perform a duty imposed by general laws upon all cities alike; nor by the negligence of any of their public officers, elected to perform their public duties and not under their control; but by the negligence of the defendants in conducting the business of their water department, which, by virtue of a special act of the legislature, accepted by the defendants, was maintained by them for the purpose of distributing water for toll; that all the property comprised in their water department is owned and held by the defendants, not in their public and governmental capacity, but in their private corporate capacity, and that their business of distributing water is a private business, in conducting which the defendants have the same rights and are subject to the same liabilities as a natural person; that the officers in the water department are not public officers, elected or appointed under general laws for the performance of public duties, but are the defendants' own officers, employed by them in their private capacity for conducting their private business of distributing water, and over whom they have full power of direction and removal; and that, therefore, the defendants are liable for negligence, as a private water company would be.

The contention that the action should have been brought against the water precinct is disposed of by *Brown* v. *Concord,* 56 N. H. 375, 379, 381. The precinct is not a corporation and cannot be sued. If in some sense the city is a trustee for the precinct, and if the circumstances of this case are such that the *cestui que trust* ought to reimburse the trustee for any amount recovered, that is a matter for future adjustment between the parties concerned, but is not involved in the present case. A trustee cannot escape liability for his own torts, whether they are or are not of such a character that he ought to be reimbursed for what he has to pay as damages.

The defendants' statements in their plea, that by virtue of the statute and ordinances the water commissioners are an independent board and that the defendants could not direct or control them in the discharge of their duties, is at variance with the terms of the ordinances as set up in the plea itself. Not only have the defendants not undertaken to set up an independent board of commissioners, not removable by them nor under their control, but they have no authority to do so. The fact that they in practice do leave various matters to the commissioners and other agents, and do not interfere with or direct them as to their every act, is no more than in almost every case of agency. It is rare that an agent employed for general purposes is vested with no discretionary powers, however it may be with an agent for a single definite purpose.

A sovereign state has immunity from suit in its own courts, unless it permits the suit. Whether the suit be on a contract or for a tort, whether it grow out of public or private business of the state, whether the moral obligation be strong or weak or there be none at all, whether there be a liability that would be enforced by any court having jurisdiction or no liability at all,— all these points are entirely immaterial. The only remedy of a party having a claim against the state is an application to the legislature. If there is anything in *Wooster* v. *Plymouth*, 62 N. H. 193, *Sargent* v. *Gilford*, 66 N. H. 543, or *Doolittle* v. *Walpole*, 67 N. H. 554, or in any of the cases that state that a town is not liable to suit unless the action is given by statute, which might be thought by one not acquainted with the law to hold that a town has the same immunity from suit as the state, it was evidently not intended to bear that construction. *Leavitt* v. *Dover*, 67 N. H. 94, *Osgood* v. *Conway*, 67 N. H. 100, *Jones* v. *Chester*, 67 N. H. 191, and *Rider* v. *Portsmouth*, 67 N. H. 298, are cases in a single volume in which judgment was rendered against the defendant town or city, but which the most ignorant practitioner would not have thought of bringing against the state. No one of them was authorized by any statute. No statute authorizes a suit against a town on its bonds or notes; for the statutes giving authority to issue them (P. S., *c.* 40, *s.* 17 ; *Ib.*, *c.* 43, *ss.* 20, 22) are similar to those authorizing state bonds and notes (P. S., *c.* 15, *s.* 10 ; *Ib.*, *c.* 16, *ss.* 6, 7), which certainly do not authorize a suit against the state. If section 1, chapter 40, of the Public Statutes, providing that a town "by its corporate name may sue and be sued," is a waiver of immunity as a sovereign, instead of merely a part of the definition of a corporation, it is a complete waiver, and leaves nothing to discuss on the point.

Whether the exemption of a town from suit in cases in which it acts merely as a public agency, or in which it does not even act at all, but merely has officers who act as public agents, can be derived from the immunity of the state from suit in its own courts, or whether it is wise to apply the principle to cases in which the state, though exempt from suit, would be under a moral obligation to make compensation, or even a legal obligation if there were any court having jurisdiction, need not here be considered; for in New Hampshire, as elsewhere, the exemption of a town from liability as a part and an agency of the state extends only to its public functions. In most cases, and we think in all where a town is held exempt from suit, the real point of the decision is, not merely that the action cannot be maintained, but that there is no liability, no obligation of any kind, no right to pay; that payment by the town would be a mere illegal gratuity, which the

court would enjoin at the suit of taxpayers, as in *Merrill* v. *Plain-field*, 45 N. H. 126, *Brown* v. *Concord*, 56 N. H. 375, and *Osgood* v. *Conway*, 67 N. H. 100.

The fact that one object of the defendants' water-works is to provide themselves with water for the public purpose of extinguishing fires, is immaterial. The following authorities show that a town is not exempt from liability for an injury occasioned by the negligent management of its private business, merely because that business has some connection with, or aids in, the discharge of a public function. *Eastman* v. *Meredith*, 36 N. H. 284, 293; *Rowe* v. *Portsmouth*, 56 N. H. 291, 294, 295; *Edgerly* v. *Concord*, 62 N. H. 8, 19, 22; *Clark* v. *Manchester*, 62 N. H. 577; *Oliver* v. *Worcester*, 102 Mass. 489; *Aldrich* v. *Tripp*, 11 R. I. 141.

" A municipal corporation, owning water-works or gas-works which supply private consumers on the payment of toll, is liable for the negligence of its agents or servants the same as like private proprietors would be." 2 Dill. Mun. Cor., *ss.* 954, 981; *Eastman* v. *Meredith*, 36 N. H. 284; *Grimes* v. *Keene*, 52 N. H. 330; *Rowe* v. *Portsmouth*, 56 N. H. 291, 294; *Edgerly* v. *Concord*, 59 N. H. 78, 80; *Edgerly* v. *Concord*, 62 N. H. 8, 19, 22, 23; *Clark* v. *Manchester*, 62 N. H. 577, 579; *Aldrich* v. *Tripp*, 11 R. I. 141; *Oliver* v. *Worcester*, 102 Mass. 489, 500; *Emery* v. *Lowell*, 104 Mass. 13, 15; *Hill* v. *Boston*, 122 Mass. 344, 359; *Murphy* v. *Lowell*, 124 Mass. 564; *Hand* v. *Brookline*, 126 Mass. 324. The foregoing were all cases in which either the liability for personal injuries was distinctly in question, or in which language including such injuries was employed. The liability for an injury to property is established in numerous Massachusetts cases, and in the following New Hampshire cases : *Eaton* v. *Railroad*, 51 N. H. 504; *Gilman* v. *Laconia*, 55 N. H. 130; *Rowe* v. *Portsmouth*, 56 N. H. 291; *Parker* v. *Nashua*, 59 N. H. 402; *Vale Mills* v. *Nashua*, 63 N. H. 136. All the foregoing cases were for the diversion of water. In *Nutt* v. *Manchester*, 58 N. H. 226, and *Willey* v. *Portsmouth*, 64 N. H. 214, the plaintiffs recovered without exception being taken to the liability.

All the statements made in *Gross* v. *Portsmouth*, 68 N. H. 266, were true of the water commissioners of Portsmouth, under the act creating them. Laws 1891, *c.* 209, *s.* 6. None of them is true of the water commissioners of Concord. Whether the circumstance that the city of Portsmouth, though the owner of water-works, cannot control them in the way it controls its ordinary property and business,—through the city councils,—but that with respect to the water-works it can act only through a board of water commissioners, should have had controlling weight, is a question on which a difference of opinion exists among the courts; but that

question is not involved in the present case. Accepting the decision as correct, it settles the law for this state that the control of the principal over the supposed agent is necessary for the application of the maxim *respondeat superior*. But the defendants have the same control over their water board and superintendent that a private water-works company has over its superintendent or other officers, and they can exercise it in the same way they exercise all their other powers — through their city councils. Their city councils can entrust as much or as little as they choose to a superintendent or board of commissioners, can attend to as much or as little as they choose themselves. The superintendent and board are no more independent of their employers than a janitor of a business block would be because he received no directions about making fires or sweeping the floors, or a railroad engineer because his railroad had never instructed him which way to turn his levers.

*Sargent & Niles*, for the defendants. The question for the consideration of the court is whether the city of Concord is liable for the negligence of the superintendent of the water-works, who is an employee of the board of water commissioners.

I.   In *Gross* v. *Portsmouth*, 68 N. H. 266, it was held that the city of Portsmouth was not liable for the negligence of employees of the water commissioners, upon the ground that the water commissioners were "not the city's agents, but an independent board." That decision is conclusive against the plaintiff. The water board of Concord has the same authority as the water board of Portsmouth, the only difference in the relation of the boards to their respective cities being that the Portsmouth board derives its authority directly from the legislature, while the Concord board takes its existence and powers from the legislature through the medium of the city councils of Concord, acting under the legislative authorization. In the one case the legislature acted directly, while in the other it delegated its legislative functions to a legislative body, which, from its more intimate acquaintance, with, and more direct interest in, the subject of the proposed legislation, was better qualified to deal with it. That legislative body having acted, by the adoption of an ordinance, that ordinance has the same force and effect as the act of the legislature in the case of the Portsmouth board. The principle that an ordinance of a municipal legislative assembly, adopted by authorization of the state legislature, has the same force and effect as an act of the legislature itself, is universally recognized (1 Dill. Mun. Cor., s. 308; *St. Louis* v. *Boffinger*, 19 Mo. 13, 15; *Taylor* v. *Carondelet*, 22 Mo. 105; *Hopkins* v. *Swansea*, 4 M. & W. 621, 640; *Gould* v. *Raymond*, 59 N. H. 260, 276; *Kelley* v. *Kennard*, 60 N. H. 1, 6), and has

received a very full discussion by Chief Justice *Doe* in *State* v. *Hayes*, 61 N. H. 264, 314–320.

Applying this principle to the facts under consideration, we reach this result : The charter of the city of Concord merely gives the city the alternative of managing the works, or entrusting the management to commissioners.    The legislature leaves to the city councils the legislative power in this particular, instead of exercising that power itself, as it did in the case of Portsmouth.    That power has been exercised by the city councils acting in their legislative capacity, the legislative act establishing the two boards and conferring upon them the entire management of their respective works being in essential particulars practically the same, and the authority conferred upon the commissioners being in each case subject to amendment or revocation by the legislative body conferring it — that is, in Portsmouth by the legislature, and in Concord by the city councils.    The fact that the complete control conferred by the city councils upon the commissioners is subject to modification or revocation does not detract from the independence of the board, in the absence of amendment or repeal, and has no more tendency to make the city liable for the acts of the board than the reservation in the act constituting the water board of Portsmouth of the power of amendment or repeal has to make the political body whose legislative assembly reserves this power, *i. e.*, the state, liable for the misfeasance of the Portsmouth water board. The fact that the water boards of Concord and Portsmouth received their complete and independent powers from different legislative bodies does not tend to differentiate between the quality of their independence, or between their relations to their respective cities.    Both are independent boards, though liable to have that independence taken away by the legislative body which conferred it.

II.    There is another consideration which is conclusive against the claim of the plaintiff, and which, so far as we can ascertain, is peculiar to this case.    It appears that the city has, under legislative authority, established a water precinct which includes only about two thirds of the area of the city, outside of which citizens reside and taxable property is situated.    These citizens have no beneficial interest in the water-works system, and are not liable to be taxed for its support.    The moneys received on account of the water-works are "kept and applied exclusively for the uses of said water-works."    The inhabitants of the city living outside the precinct, and the city, as such, have no beneficial interest in the system.    The city, so far as it has anything to do with the administration of the affairs of the water-works, does it for the benefit of the precinct, at the command of the legislature.

III.   It would be unprofitable to discuss the authorities bearing upon the involved question of the responsibility of municipalities for the torts of agents or servants, in the absence of a statute creating a liability, in view of the fact that this question, so far as it relates to this case, has been fully discussed, and the position of this court stated in clear and unmistakable terms, in *Edgerly* v. *Concord*, 62 N. H. 8.   In that case it is said (*p.* 23) : " On principle, and by a very great weight of authority, a municipality cannot be made liable, in the absence of a statute giving the remedy, for an injury arising from a negligent use of its property, from which it receives, in its corporate capacity, no special benefit, or from a negligent use of its property by its officers not acting, as agents or servants of the corporation, but as public officers whose duties are defined by general law."   Moreover, we do not admit that in New Hampshire the distinction is recognized between negligence in the performance of governmental duties and negligence in the transaction of business carried on by the city or town in its private corporate capacity.   It is true that this distinction has been suggested, but it is in direct conflict with the utterances of the court in later cases, is unsound in principle, and impracticable in operation.

The plaintiff's counsel say that if there is anything in any of the cases which might be thought by one not acquainted with the law to hold that the town has the same immunity from suit as the state, it was evidently not intended to bear that construction.  Some of the statements in *Wooster* v. *Plymouth*, 62 N. H. 193, " which might be thought by one not acquainted with the law to hold that a town has the same immunity from suit as the state," are as follows :

" The state possesses certain powers over municipalities because the state and its subdivisions are indentical in essence, and a private right, not granted or reserved for the state, is not granted or reserved for its municipalities. . . . A city is only a political subdivision of the state, made for the convenient administration of the government. . . . The municipal government is really but a branch of the state. . . . A municipal corporation, while nominally a person, is virtually a political power, a constituent element of one sovereignty, and its local legislation and administration are the legislation and administration of the state. . . . As it is a portion of the sovereign power of the state, it is not subject to federal taxation of its municipal revenues. . . . Its property is exempt from state taxation, because, like the property of the state, it is public. . . . The charter of a town is not a contract, because there is but one party. . . . Public corporations are such as are created by the government for political purposes, as counties, cities, towns,

and villages ; they are invested with subordinate legislative powers, to be exercised for local purposes connected with the public good, and such powers are subject to the control of the legislature of the state."

We confess that we receive from these statements a very clear impression that the court intended to lay down the doctrine that the liability of towns and cities rests upon the same basis as that of the state, the state and its subdivisions being "identical in essence," the one being at common law equally liable with the other for negligence in the performance of the public duties for which alone it has been called into being. The theory that towns are liable for the negligence of their agents in the same manner and to the same degree as private individuals or corporations, is directly negatived by the decision in *Sargent* v. *Gilford,* 66 N. H. 543.

The court intended to hold in *Doolittle* v. *Walpole,* 67 N. H. 554, " that a town has the same immunity from suit as the state,"— else why did they say: "Constituting a portion of the sovereign power of the state, a municipal corporation is, therefore, not subject to an action, unless a right of action is conferred by statute "? If there is a distinction between what the court plainly say, and what the counsel for the plaintiff declare the court evidently do not mean to say, it is too fine for us to discover. We are obliged to take the court at their word, and assume that they meant just what they said, particularly as their position with regard to the non-liability of municipal corporations, in the absence of a statute creating the liability, is the only position consistent with the theory of the relation borne to the state by its municipal subdivisions, as elaborated in *Wooster* v. *Plymouth.* These opinions leave no room for the doctrine that a city or town is sometimes a private and sometimes a public corporation. Municipal corporations have no " private capacity," but exercise only public functions. " The law regards municipal corporations as agents and instruments of the state for the exercise of its governmental functions in a certain district." Is the agent of the state liable to a suit based on the manner of its performance of its governmental functions, while the state is not liable in like circumstances?

The city of Concord is the "state" in the sense in which the word is used when it is said in general terms that the "state" is not liable to suit,— that is to say, the sovereign is not liable to be sued,— and within its limits the city is as much a sovereign as that larger political body which by an unfortunate confusion of terms is in this country known as " a state," the general term expressive of sovereignty being here specialized and applied to each of a class of bodies politic possessing in a limited degree the attributes of sovereignty. When we say the state cannot be sued

without its own consent, we do not refer particularly to those po-
litical bodies which constitute the component parts of the United
States of America; the statement applies, not to the states of the
Union, but to each and every body politic exercising within cer-
tain territorial limits the attributes of sovereignty, whether that
authority be supreme or subordinate. When our courts announce
the non-liability of the state to suit, the declaration applies with
equal force to the United States, the state of New Hampshire,
Merrimack county, the city of Concord, and the Union school dis-
trict in the city of Concord; each is "the state," the sovereign,
though with widely varying powers and jurisdiction. "Its local
legislation and administration," declares Chief Justice *Doe*, in
*Wooster* v. *Plymouth*, in speaking of a municipal corporation, "are
the legislation and administration of the state." The act of the
city councils of Concord in voting to establish a water precinct
within its limits instead of itself undertaking the proposed works,
was as truly an exercise of the sovereign power of legislation as
the act of the legislature authorizing it; and the administration of
the affairs of the precinct by the city is "the administration of the
state," an exercise of governmental functions, an act of sover-
eignty. The city, in the exercise of its sovereign powers, created
the precinct; and in the exercise of the same powers, administers
its affairs. To sue it for its negligence in that administration
would be nothing less than to sue the state, without its consent,
for maladministration in the exercise of its powers of sovereignty.
No valid principle can be suggested upon which the city can be
held liable in such a case which does not apply with equal force
to the state. The only principle recognized by any of the author-
ities is that municipal corporations are liable for the torts of their
agents or servants committed in the transaction of business carried
on by them in their private corporate capacity, or in the manage-
ment of property in which they have a private beneficial interest.
To this theory, the reply of Chief Justice *Doe* is full and convin-
cing: "Public corporations are those which are created for public
purposes, and whose property is devoted to the objects for which
they are created. The corporators have no private beneficial in-
terest either in their franchises or their property. The only pri-
vate right which individuals can have in them is the right of
being and acting as members. Every other right and interest
attached to them can only be enjoyed by individuals, like the com-
mon privileges of free citizens and the common interest which all
have in the property belonging to the state. . . . Public corpora-
tions are such as are created by the government for political
purposes, as counties, cities, towns, and villages; they are in-
vested with subordinate legislative powers, to be exercised for

local purposes connected with the public good, and such powers are subject to the control of the state."

In view of this declaration of the nature of the purposes for which municipal corporations are established, the inaccuracy of the plaintiff's description of the defendants as "carrying on a private business, having a right to make a profit out of it the same as a private company would," is at once apparent. Municipal corporations have no authority to carry on a private business, or to tax their citizens for its support. The only justification which can be found for allowing municipalities to carry on the business of supplying water or gas to their citizens, to operate street railway systems, and to perform similar services, to exercise the power of eminent domain in behalf of these enterprises, and to tax their citizens for their support, is found in the fact that they are not private business, but "public purposes," "local purposes connected with the public good." And when a private water company obtains from the legislature a grant of the sovereign power of eminent domain, this grant is upheld by the courts upon the ground that it is fulfilling a public purpose, assisting the state in the performance of its governmental functions, precisely as railroads are granted the same power to enable them to assist in the governmental task of furnishing an adequate system of public highways. Private individuals and corporations frequently carry on the business of maintaining public highways, such as turnpikes, toll-bridges, and railroads, but no one has ever had the hardihood to maintain that when the state assumed this duty it therefore became engaged in a "private business."

These private corporations are not exempt from suit, because they are private corporations, and not mere subdivisions of the state. The further distinction noted by Chief Justice *Doe* is also worthy of comment,— that they are operated for the pecuniary benefit of the incorporators, while the residents of a city operating a system of water-works have no private beneficial interest in them, any more than citizens of the state generally have in the property of the state. It is an entire misapplication of terms to speak of a municipality as engaged in business of a private corporate capacity, or as having a private beneficial interest in any of its property, because municipalities are established only for public political purposes, and cannot constitutionally exercise the power of eminent domain, or expend money raised by taxation for any other purpose, and because the interest of the municipality and its citizens in its income-bearing property is in no wise different from the interest of the state and its citizens in its similar property,— as, for instance, leased wild lands. The citizens of the municipality may receive an indirect pecuniary benefit, in the reduction of

taxes, from the prudent and economical management of the water-works; but they receive a like benefit from the prudent and economical management of their highways by the highway surveyor. Yet for the negligence of the highway surveyor they are not liable, unless by statute. What valid ground of distinction can be suggested?

It seems impossible, if the criterion of the public or private character of the enterprise in question is to be the test of liability, to establish any fixed rule or standard by which this test is to be applied. Courts adopting this distinction have generally held that in constructing and maintaining highways, conducting schools, providing for police protection and the extinguishment of fires, and in taking precautions for the preservation of the public health, the city or town is exercising purely governmental functions; while in owning and managing water-works, gas-works, sewers, and public parks, it is acting in its private corporate capacity. What clear line of demarcation is to be discovered between these classes of acts? It certainly cannot be found in the often suggested distinction that those acts are public in their nature which affect the state at large, while those are private by which the citizens of the municipality are alone benefited. Public highways cannot be put upon one side of this line, while public parks are ranged on the other. Both are used mainly by the residents of the town which maintains them, but both are equally open to all the residents of the state.

In view of these principles, it would be unprofitable to consider at length the query propounded by the plaintiff as to the foundation of the right of action against towns upon their contracts. The court has again and again stated in unequivocal terms that there is no such right of action unless conferred by statute, expressly or by necessary implication. This right, in the case of contracts, may fairly be implied from the statute giving towns the power to make all necessary contracts,— together with special statutory provisions regarding municipal notes and bonds,— contracts being, by definition, binding agreements capable of enforcement by legal process. The statute making towns bodies corporate, capable of suing and being sued, merely has the effect of endowing them with such a quality of personality as to enable them to become parties to legal actions, but in no way affects their general non-liability to action, in the absence of statutory permission.

But however the liability of towns to actions of contract may be explained, this is certain, and sufficient for the purposes of this case, that while the general liability of towns to such actions is established in this state by long usage, their non-liability for their torts is almost equally well established. There may be some

conflict of decisions; some of the earlier cases, such as *Rowe* v. *Portsmouth*, 56 N. H. 291, may be irreconcilable with the opinions in later cases, such as *Wooster* v. *Plymouth* and *Doolittle* v. *Walpole*. But if the decisions cannot be reconciled, the later presumably express the mature and deliberate judgment of the court, and alone offer any rational and practicable basis of decision. Endless confusion must result from the attempt to divide the functions of municipalities into private and public, no sound principle being suggested upon which such a distinction can be founded, and the decision in each case as it arises depending upon the impression made upon the minds of the court by a variety of trivial and inconsequential circumstances.

*Grimes* v. *Keene*, 52 N. H. 330, presents no difficulties in the decision of this case. The only question discussed in that case was whether the superintendent was the agent of the town, or an independent public officer. So far as the question whether the water commissioners of Concord are agents of the city or independent public officers is of importance in this case, it may be remarked that the suggestion found in some of the cases that public officers are those whose duties are prescribed by general law is clearly incorrect. The duties of the Portsmouth water commissioners were defined by the special act establishing the water-works; yet in *Gross* v. *Commissioners*, 68 N. H. 389, they are expressly stated to be public officers. The police commissioners of the various cities of the state are created and their duties defined by special acts; yet they are not the agents of their respective cities, but independent public officers.

Nor is the fact that an officer is subject to removal by the executive officers or legislative body of the city or town a sure proof that he is not a public officer. Officers of the peace, such as police officers and constables, are invariably held to be public officers; yet under our statutes, marshals, assistant marshals, police officers, and constables may be at any time removed for cause by the board of mayor and aldermen, and the selectmen of towns are authorized to appoint special police officers, having the powers of constables, but holding office only during the pleasure of the selectmen. Firewards, held in *Edgerly* v. *Concord*, 62 N. H. 8, to be public officers for whose negligence the municipality is not responsible, are generally appointed by the selectmen, their term of office being liable to be terminated at any time by vote of the town in town meeting — the legislative assembly of towns corresponding to the city councils of Concord, in whom is vested the similar power of removing from office at will any member of the board of water commissioners. The decision in *Edgerly* v. *Concord* is not dependent upon the fact that the duties of the engi-

neer and other officers of the fire department are prescribed by general law, but would necessarily, under the authority of *Gross* v. *Portsmouth* and *Gross* v. *Commissioners*, be the same under the present constitution of the city's fire department, which derives its authority from a special act of the legislature.

Public officers, under our New Hampshire decisions, are those who, in the performance of their duties, act upon their own responsibility, under authority such that they are for the time being independent of the control of the general executive officers of the town or city, regardless of the questions whether that authority is liable to be revoked or altered, and whether they can be removed from office at the pleasure of the appointing power, and from whatever source their authority may be derived.

To sum up, then, our positions:

1. The water commissioners of Concord are a board of independent public officers, for whose negligence the city is not responsible.

2. Even if a municipal corporation were liable for negligence in the performance of business of a private corporate nature, in which it has a private beneficial interest, the city would not be liable in this case, because in so far as it administers the affairs of the waterworks it does so in a purely governmental capacity, as a burden assumed for the benefit of the precinct. The city cannot be sued simply because it has at its command a method by which it can reimburse itself, nor yet because there is no one else to sue.

3. The distinction between public and private functions of a municipality is not recognized by our latest and best-considered cases, which lay down in the clearest terms the doctrine that a municipal corporation, being a mere subdivision of the state and possessing the same attributes of sovereignty, is not liable to suit except by permission of the legislature. This distinction is further unsound upon principle, cities and towns being established solely for public purposes, and having no constitutional right to invest their funds in private enterprises. It is also impracticable in operation, because no clear line of demarcation is laid down in the reported cases, or can be suggested, by which to distinguish the private from the public functions of a municipality, and the question what a court will decide in a given case must always remain a matter of guesswork, in the absence of decisions by the same court upon exactly the same state of circumstances.

*Walter S. Peaslee* and *E. A. & C. B. Hibbard*, for the plaintiff, cited and commented upon: 2 Dill. Mun. Cor., s. 974; Tied. Mun. Cor., s. 324; 1 Shearm. & Red. Neg., s. 290 *et seq.;* 1 Jag. Torts 173, 174; Cool. Torts 742; 7 Thomp. Corp., s. 8144; *Small* v.

*Danville*, 51 Me. 359 ; *Cumberland etc. Corp.* v. *Portland*, 62 Me.
504; *Woodcock* v. *Calais*, 66 Me. 234 ; *Moulton* v. *Scarborough*, 71
Me. 267 ; *Bulger* v. *Eden*, 82 Me. 352; *Eastman* v. *Meredith*, 36
N. H. 284 ; *Grimes* v. *Keene*, 52 N. H. 330 ; *Gilman* v. *Laconia*,
55 N. H. 130 ; *Rowe* v. *Portsmouth*, 56 N. H. 291 ; *Parker* v. *Nashua*,
59 N. H. 403 ; *Clark* v. *Manchester*, 62 N. H. 577 ; *Willey* v. *Ports-
mouth*, 64 N. H. 214 ; *Winn* v. *Rutland*, 52 Vt. 481; *Welsh* v.
*Rutland*, 56 Vt. 228 ; *Weller* v. *Burlington*, 60 Vt. 28 ; *Oliver* v.
*Worcester*, 102 Mass. 489 ; *Emery* v. *Lowell*, 104 Mass. 13 ; *Brooks*
v. *Somerville*, 106 Mass. 271 ; *Hill* v. *Boston*, 122 Mass. 344 ; *Mur-
phy* v. *Lowell*, 124 Mass. 564 ; *Hand* v. *Brookline*, 126 Mass. 324 ;
*Coan* v. *Marlborough*, 164 Mass. 206 ; *Norton* v. *New Bedford*, 166
Mass. 48 ; *Lynch* v. *Springfield*, 174 Mass. 430 ; *Aldrich* v. *Tripp*,
11 R. I. 141 ; *McCaughey* v. *Tripp*, 12 R. I. 449 ; *Wixon* v. *New-
port*, 13 R. I. 454 ; *Pomroy* v. *Granger*, 18 R. I. 624 ; *Jones* v.
*New Haven*, 34 Conn. 1 ; *Weed* v. *Greenwich*, 45 Conn. 170 ; *Nor-
walk Gas Light Co.* v. *Norwalk*, 63 Conn. 495 ; *Walsh* v. *Brooklyn
Bridge*, 96 N. Y. 427 ; *Walsh* v. *New York*, 107 N. Y. 220.

*Sargent & Niles*, for the defendants, in reply.    We have, in our
former briefs, taken the position that municipal corporations are not
liable in this state for their torts, in the absence of a statute creating
such liability ; but that as to contracts the common-law principle of
non-liability has been modified, either by the statute permitting towns
to make contracts, or by virtue of a long established and well recog-
nized exception to the general rule.   At the oral argument, we were
asked by the court, whether, if the city were considered the
employer of the plaintiff, the contractual relation of master and
servant did not exist between the plaintiff and the defendant, so
that the liability in this particular case was of a contractual
nature, upon which, under the principle of municipal liability on
contracts, an action could be maintained against the city.   To this
suggestion we desire to reply briefly.

This suit is an action on the case for negligence — an action of
tort, not of contract.   It is based upon the general principle, summed
up in, or derived from, the maxim, *Sic utere tuo ut alienum non
lædas*,— that one having the control of agencies, forces, or prop-
erty is responsible for injury to another, directly resulting from
his failure to exercise, in the control of those agencies or forces, or
of that property, such care as a reasonably prudent man would
exercise under the circumstances.   One of the " circumstances "
bearing upon the question of reasonable care is the relation existing
between the parties.   Ordinary care toward a person on one's
premises in the course of a business transaction in which both are
interested may be greater than toward one on those premises

merely by license or tacit sufferance, or toward an unwelcome and unexpected trespasser. But these various relations do not create the obligation; they merely assist in determining the standard of care due from the owner of the premises, in view of his relations with the persons injured.

A shopkeeper owes toward his customers the duty of keeping his shop in such reasonably safe condition that they shall not be exposed to dangers undiscoverable by them by the exercise of reasonable care. This duty is based on the principle stated above; not on any contract, because there is no contract. His relations with them merely serve to assist in fixing the measure of care which they have a right to expect. He desires their presence, and knows that he must anticipate it. It is this knowledge of their probable presence, with other circumstances, that determines the extent of his obligation. Upon the same principle rests the obligation of a railroad company to its passengers and those who visit its stations for the purpose of meeting persons arriving on trains, or for similar purposes connected with no contractual relation. To all such persons is due the exercise of reasonable care, because the company knows that they are likely to be on its premises. Its contract with its passengers cannot be regarded as the basis of an action of tort for negligence; a breach of a contract, as such, is not a tort. The only value of the contract is as evidence of the existence of such a relationship between the parties that the defendant should have known that the plaintiff, acting as he would be expected to act in view of that relationship, would be exposed to danger unless precautions were taken for his protection. " The real value of the phrase [invitation] may not improperly be said to be, that invitation imports knowledge by the defendant of the probable use by the plaintiff of the article supplied, and therefore carries with it the relation between the parties which establishes the duty." *Brett,* M. R., in *Heaven* v. *Pender,* L. R. 11 Q. B. Div. 503, 512, 513.

The obligation of the master to the servant is derived from no different source than that of the shopkeeper to his customer, or of the railroad to its passengers, the visitors at its stations, those who customarily cross its tracks at a particular place with its knowledge and tacit consent, or even the casual trespasser on its premises. There may be in some cases actions both of tort and of contract,— as, for example, against common carriers; but the action of tort is not founded on the breach of contract, but on the failure of one party to exercise reasonable care, knowing that that failure would be likely to result in injury to the other. When it is said that the master is under obligation to provide for the servant a reasonably safe place in which to work, and reasonably safe machinery and appliances, it is not meant that he agrees

to do this, so that for failure to do so an action of assumpsit will lie; but rather that the master, because of the relationship between himself and his servant, knows that the servant will be on his premises, and will use his machinery and other appliances, and that those precautions are due, not by virtue of any contract, but because they would be taken, under like circumstances, by men of reasonable prudence. It must be apparent that the plaintiff in the present case, assuming that the city was his employer, could not sue in assumpsit for his injuries, alleging that they were due to a breach by the city of some term of the contract of service, because there is no such term. His only remedy is necessarily by an action on the case.

An attempt to sue in contract for an injury caused to a servant by the master's negligence was made in *Riley* v. *Baxendale*, 6 H. & N. 445. The declaration alleged that the hiring of the plaintiff was "on the terms that the defendants should take due and ordinary care not to expose the said [plaintiff] to extraordinary danger and risk in the course of his said employment."

Held (MARTIN, B.): "There has been a series of cases in which the duty of the master has been improperly declared upon as a contract. This imposes a difficulty on the defendant by making it impossible for him to demur, and all that he can do is to deny the contract. I am of opinion that on the hiring of a servant no such contract as this is to be implied; there is a mere contract of service. No such contract as that stated in the declaration really existed, and liability of a master for injury to his servant in the course of his employment is one of a different character."

(WILDE, B.) "It does not follow that wherever a duty is cast upon a person the law will imply a contract on his part to perform it."

(POLLOCK, C. B.) "Generally speaking, a mere duty cannot be turned into a contract, and great inconvenience would result if we were to permit it to be declared on as such."

The fact that the liability of the master to the servant in cases of negligence is not of a contractual nature, is clearly stated in the following authorities: Busw. Pers. Inj. 4–6, 310; Big. Cas. Torts 706; Cool. Torts 549, 550; Bev. Neg. 313, 314. It must be plain, upon these authorities, not only that the liability of the master to the servant for injuries caused by the master's negligence is not contractual in its nature, so as to support an action of contract, but also that the contract of service is in no respect the basis of the liability, which is founded upon the broad principles of liability for the negligent management of property, forces, or agencies, by persons having them under their control, which

obtain among men in general, regardless of contractual relations. So far as the distinctions between invitation, license, and trespass are of any assistance in determining the legal status of a plaintiff (they are probably worse than useless, the defendant's knowledge of the plaintiff's probable presence in a place of danger controlled by the defendant being the true test of liability, rather than any consideration of the legal position of the plaintiff with regard to his presence on the premises), the servant, under the narrowest possible definition of invitation, is on the master's premises by invitation, his presence being with the assent of the master, and upon business in which both are interested. The master's duty to exercise care toward him is founded on the same principles, and measured by the same standard, as the duty of the common carrier toward its passengers, or of the shopkeeper toward his customers. The contract of service is not the foundation of the master's liability in tort, but is merely one of the circumstances tending to establish the standard of care which he should exercise in the performance of the duty resting upon him, as upon all persons within the jurisdiction of the common law, so to manage the property, forces, and agencies under his control as to do no unnecessary injury to the persons or property of others.

The liability of the city to the plaintiff for his injuries, assuming that the city was his employer, is not a contractual liability, and he therefore cannot avail himself of the liability of municipal corporations in New Hampshire to suits upon their contracts ; and there is no such liability with regard to torts, in the absence of a statute creating the remedy. The liability of towns to suits upon their contracts, viewed as based upon the statute authorizing them to make contracts, and containing, by necessary implication, a provision for their enforcement, is not an exception, opening the way to other exceptions, to the general rule that towns, as subdivisions of the sovereign state, are not liable to suit in the absence of statutes creating such liability, but is rather an illustration of that rule. There is no similar statute with regard to the torts of towns, except as to accidents due to certain defects in highways, and the plaintiff, having no right of action of a contractual nature, is without remedy against the city.

PEASLEE, J. The plaintiff's demurrer raises the question whether there is in this state any common-law liability of a municipal corporation ; and if there is, whether it exists in the class to which the present case belongs.

While it is the law of this jurisdiction that towns are to a certain extent a part of the state, and therefore not suable at common law, no case has gone so far as to hold that this rule applies

to all cases.   There are some expressions in *Wooster* v. *Plymouth*,
62 N. H. 193, which might, taken alone, bear such interpretation ;
but that this is not their meaning is apparent from the fact that
the opinion is expressly limited in its application to the corporate
rights of towns, "so far as they are involved in this suit," and
relates to "their purely public capacity."   *Ib.* 221.   The expres-
sions are superfluous if towns have not rights and duties which are
not purely public.   It is important to note that the question there
involved was "whether, in the vindication of rights purely public,
the state is constitutionally entitled to trial by jury, and, if it is
not, whether, in this case, the defendants stand in the position of
the state, or in the position of a private person."   *Ib.* 194.   The
court did not understand that the earlier cases upon common-law
municipal liability were involved in the consideration of this ques
tion ; for if there had been such understanding, it cannot be
doubted that those cases would have received full consideration.
Again, at the same term, it was said in another case : "To charge
a corporation with damages for injuries arising from misfeasance
and neglect of duty, no statute fixing the liability, there must be
acts positively injurious committed by authorized agents or officers
in the course of the performance of corporate powers, or in the
execution of corporate duties, in distinction from those done in a
public capacity as a governing agency. . . . Municipal corpora-
tions may be liable for acts done under a grant of special powers
not held under any general law, and from the execution of which
some special profit or advantage is derived (*Rowe* v. *Portsmouth*,
56 N. H. 293) ; and generally for injuries received from the negli-
gent management of property not held for strictly public pur-
poses, corporations are liable in the same way and to the same
extent as individuals."   *Edgerly* v. *Concord*, 62 N. H. 8, 19.   In
another opinion, also delivered at the same term, this language
was used : "The city was dealing with and managing the land as
a private owner deals with and manages his own property.   Under
such circumstances the defendants would be liable for an injury
resulting from their want of care, in the same manner and to
the same extent that an individual would for his negligent acts
in the care and management of his property."   *Clark* v. *Manchester*,
62 N. H. 577, 579.   It is evident that many of the remarks in
*Wooster* v. *Plymouth*, which are correct as applied to the facts and
questions of law involved in that case, are not applicable, and were
not intended to refer, to cases involving dissimilar questions.

The mere fact that a town is engaged in the performance of a
public duty is not enough to free it from all common-law liability
for its acts, if the word public is to be taken in the broad sense of
including every enterprise which may be supported by taxation.

There is no case laying down such a doctrine in this state.
*Farnum* v. *Concord*, 2 N. H. 392, merely states the rule as appli-
cable to an action by a traveler for damages caused by a defective
highway, giving no reasons therefor. The Massachusetts case
relied upon. (*Mower* v. *Leicester*, 9 Mass. 247) was decided upon
the authority of *Russell* v. *Men of Devon*, 2 T. R. 667, and the
reasons for the decision there have not been understood as going
to the · extent of denying all common-law liability of municipal
corporations. See 9 Mass. 250, note; *Ball* v. *Winchester*, 32 N. H.
435, 442; *Eastman* v. *Meredith*, 36 N. H. 284, 298; *Hill* v. *Bos-
ton*, 122 Mass. 344; *Mayor of Lynn Regis* v. *Turner*, Cowp. 87.
In the case last cited, the court of king's bench, speaking through
Lord *Mansfield*, recognized the common-law liability of a municipal-
ity fourteen years before the decision of *Russell* v. *Men of Devon*.
In *Ball* v. *Winchester, supra*, liability is denied upon the ground
that highway surveyors are independent public officers, over
whose acts the town has no control. So far as it decides that a
town may, in the maintenance of highways, negligently flood the
land of abutters, it is not now the law of this state. *Gilman*
v. *Laconia*, 55 N. H. 130. In *Eastman* v. *Meredith*, 36 N. H. 284,
288, 295, 301, the decision is placed upon the ground that the
action was based upon an injury to the plaintiff when in the
exercise of a public right. If the injury had been caused by an
infringement of a private right, the result might have been differ-
ent. "If the defendants in the present case had laid and main-
tained the foundations of their town house across a stream, and
caused the water to flow back on the plaintiff's land, according to
these authorities they would have been liable." *Ib.* 296. The
general statements concerning liabilities of towns in *Proctor* v.
*Andover*, 42 N. H. 362, are *dicta*. The decision is expressly put
upon the ground that it was not the duty of the town to maintain
the gate in question. *Hardy* v. *Keene*, 52 N. H. 370, only de-
cides (so far as this case is concerned) that highway surveyors are
not the agents of the town. "They are public officers, whose
duties are prescribed by law. Their authority is not derived from
the town, but from the statute. They are not under the control
of the town. Their powers cannot be enlarged or abridged by
any action of the town, and what they do or omit to do, in the
proper exercise of their authority, is done or omitted because the
law enjoins and prescribes their duties, independent entirely of
municipal control or authority." *Ib.* 377. *Edgerly* v. *Concord*, 62
N. H. 8, applies the same rule to fire engineers. "They were public
officers, amenable to law for their conduct, and not under control
or direction of the city. They were not agents or servants of the
city in any such sense as to bind it by their acts or make it liable

for their defaults." *Ib.* 20. In *Clark* v. *Manchester*, 62 N. H. 577, it is said that a town is not liable for neglect to perform "a public corporate duty"; but this falls far short of saying that it is not liable for negligence in the performance of a public work, whereby private rights are infringed. In *Sargent* v. *Gilford*, 66 N. H. 543, the non-liability of a town for defective highways at common law is upheld, because the duty to maintain them is imposed upon the town. "The duty is a public one, and it was placed upon towns without their procurement or assent. They derive no special benefit, pecuniary or otherwise, from the performance of it. The service is not due from them to the state or to the public by force of a common-law obligation, but is imposed upon them by statute." Certain remarks in *Doolittle* v. *Walpole*, 67 N. H. 554, seem to be broad enough to warrant the assumption that a town is not suable in any case where the right of action is not expressly or impliedly conferred by statute; but these remarks were limited to "the purpose of the present inquiry." In *Gross* v. *Portsmouth*, 68 N. H. 266, non-liability is put upon the same ground as in *Edgerly* v. *Concord, supra.* "The water commissioners are not the city's agents, but an independent board. The city cannot direct or control them in the discharge of their duties. They have exclusive authority to determine where and in what manner water pipes shall be laid, and to do all other things touching the construction, maintenance, and management of the water-works." *Ib.* 267.

A careful consideration of these cases must lead to the conclusion that there is no general rule by which the common-law liability of towns has been ascertained. That there is such a liability in certain cases is well established in this state. See cases hereinafter cited. What cases will or will not come within this class may be determined, to some extent, by a process of elimination. It appears that towns are not liable at common law, (1) for the improper discharge of a purely governmental function (*Eastman* v. *Meredith*, 36 N. H. 284; *Doolittle* v. *Walpole*, 67 N. H. 554); (2) for neglect to perform duties imposed upon them without their consent (*Sargent* v. *Gilford*, 66 N. H. 543); (3) for the acts of officers whose powers and duties are so fixed by the legislature that the town cannot control or direct their actions. *Ball* v. *Winchester*, 32 N. H. 435; *Hardy* v. *Keene*, 52 N. H. 370; *Edgerly* v. *Concord*, 62 N. H. 8; *Gross* v. *Portsmouth*, 68 N. H. 266. In every case in which it has been held that there was no liability, the decision has been placed upon one of these grounds. In no case has non-liability been put upon the broad ground that there is no common-law liability of a municipal corporation.

On the other hand, there are numerous cases wherein towns were held to answer for their acts without any statutory liability,

either expressly or impliedly imposed. *Quantum meruit* has been maintained to recover for building a highway when the plaintiff had failed to perform a special contract. *Wadleigh* v. *Sutton,* 6 N. H. 15; *Davis* v. *Barrington,* 30 N. H. 517. So where a town let a house for a term of years and the tenant made repairs, which were to be in lieu of rent, and was subsequently evicted before the end of the term, he was entitled to recover the value of the repairs to the town. *Smith* v. *Newcastle,* 48 N. H. 70. If a town so constructs a highway as to cause a nuisance upon the property of an abutter, the town is liable. *Gilman* v. *Laconia,* 55 N. H. 130; *Cole* v. *Gilford,* 63 N. H. 60. The same rule applies to the construction of sewers (*Vale Mills* v. *Nashua,* 63 N. H. 136; *Nutt* v. *Manchester,* 58 N. H. 226), to a failure to properly care for highways after they are built (*Parker* v. *Nashua,* 59 N. H. 402), and to cases where the improper construction was not authorized, but has been paid for and the benefit accepted. *Carpenter* v. *Nashua,* 58 N. H. 37. Where the work of maintaining sewers is voluntarily undertaken, the town is liable for injuries to private property resulting from negligence in such work. *Rowe* v. *Portsmouth,* 56 N. H. 291. The court has also sustained actions against towns for the obstruction of a private way (*Willey* v. *Portsmouth,* 64 N. H. 214), for money paid to discharge a debt due from the town (*Sanborn* v. *Deerfield,* 2 N. H. 251), for the expenditures of a committee to purchase land for a cemetery (*Eastman* v. *Hampstead,* 66 N. H. 195), for labor performed and materials furnished in the construction of water-works (*Leavitt* v. *Dover,* 67 N. H. 94), and for the expenses of a committee before the legislature. *Rider* v. *Portsmouth,* 67 N. H. 298; *Bachelder* v. *Epping,* 28 N. H. 354. If towns were mere divisions of the state, and could not be sued without authority from the legislature, many of these actions would have failed. The argument that the question of municipal non-liability was not raised in them is not well founded in fact. While the cases as reported do not, in most instances, mention this question, an examination of the reserved cases and the arguments of counsel will show that it was often before the court. See *Carpenter* v. *Nashua,* 104 Briefs & Cases 649; *Cole* v. *Gilford,* 146 *Ib.* 281; *Vale Mills* v. *Nashua,* 147 *Ib.* 239.

So far as the questions involved in this branch of the law have been considered, the decisions seem to recognize three classes of cases in which towns are liable for torts at common law: (1) For negligent acts (even in the discharge of imposed duties) which interfere with the rights of others, provided such rights do not depend upon the imposed duty. *Gilman* v. *Laconia,* 55 N. H. 130; *Carpenter* v. *Nashua,* 58 N. H. 37; *Parker* v. *Nashua,* 59 N. H. 402;

*Willey* v. *Portsmouth*, 64 N. H. 214. (2) For their acts concerning property not employed in a public use. *Clark* v. *Manchester*, 62 N. H. 577. (3) Where duties of a public nature are voluntarily assumed. *Rowe* v. *Portsmouth*, 56 N. H. 291. The question of the soundness of the second and third classes is not involved in this case and is not considered. There is no substantial conflict between the decisions. The court has not said that a town was not engaged in a public (or governmental) service when repairing sewers (*Rowe* v. *Portsmouth*), and that it was so engaged when constructing water-works (*Gross* v. *Portsmouth*). The nature of the work was the same in both cases; but in the latter, the work was performed by persons over whose actions the city had no control, while in the former it was done by agents whom the city might direct as to time and methods of work. It is for this reason that there was a liability in one case and not in the other. Nor are these decisions based upon an ascertainment of what is or is not a public office. It was not the nature of the duties to be performed, but the fact that in doing them the actor was or was not subject to control by the town, that determined the question of liability. The decisions resulted from an application of the rule that one is not liable for the negligent acts of those whose conduct he has no right to direct or supervise. 2 Dill. Mun. Cor., s. 974. "The maxim, *respondeat superior*, depends on the presumed control implied by the relation between the parties." *Carter* v. *Berlin Mills*, 58 N. H. 52, 53.

Non-liability has not been put upon the same ground in all cases; nor have the cases in which a liability was found to exist all depended upon a common rule. It is only in an attempt to put upon common ground cases which involve different principles that confusion arises. When the cases are properly classified they appear to be consistent with each other, and, in a general way, with the law of other states. See 2 Dill. Mun. Cor., ss. 962, 966, 971, 974, 981, 985. Viewed only with reference to the work in which the town was engaged, the decision in *Sargent* v. *Gilford*, 66 N. H. 543, that the town was not liable at common law for injuries received by a traveler, by reason of a defect in the highway, might seem to conflict with the holding that a town was so liable for building a highway so as to flow water over the abutter's land. *Gilman* v. *Laconia*, 55 N. H. 130. But the reason for the different results is plain. To establish his case a plaintiff must show that he had a right which has been infringed. In *Sargent* v. *Gilford*, the only right upon which the plaintiff could rely was the public one of using the highway, and the only duty of the town was the statutory one to maintain the way. The plaintiff's injury was suffered while he was in the exercise of a public right, and

for this no action lies at common law. *Eastman* v. *Meredith*, 36 N. H. 284. Take away the public right, and the plaintiff would stand only as a trespasser, to whom the town would owe no positive duty as to the condition of the premises. *Buch* v. *Amory Co.*, 69 N. H. 257. " The wrong thus complained of is not . . . in violation of the plaintiff's common-law right and the defendants' common-law duty, but a violation of the statutory highway right of a traveler, by a non-performance of the defendants' statutory duty of keeping the highway 'in good repair, suitable for the travel thereon.' " *Doe*, C. J., *Edgerly* v. *Concord*, 59 N. H. 78, 79. As no private right had been infringed, the plaintiff had no cause of action at common law. In *Gilman* v. *Laconia*, the situation was different. The right there invaded was the private right of property. The plaintiff complained, not that the town had failed to perform some public duty, but that it had invaded his property right. It was no answer to this complaint to say that the town was engaged in a public undertaking, or even that it was performing a public duty imposed upon it against its will. If such a defence were available, private rights would not be secure against arbitrary forfeiture, and the implied constitutional provision against taking private property for public use without compensation would be abrogated. *Eaton* v. *Railroad*, 51 N. H. 504, 511. " 'We can solve more easily and safely questions of this character, if we take pains to free our minds from the false notion that a municipality has some indefinable element of sovereign power, which takes from the property of the citizen, as against its aggressions, the protection enjoyed against the aggressions of a natural person.' The same constitutional provision that protects the right of private property against invasion by private individuals 'must protect it from similar aggressions on the part of municipal corporations.' " *Jeremiah Smith*, J., *Eaton* v. *Railroad*, *supra*, 534.

In many of the cases where a recovery has been had, the action was justified by being necessary to carry out the spirit of the supreme statute law. Although our constitution contains no express declaration that private property shall not be taken for public use without compensation, that rule is implied from the spirit of equality which pervades its every part. *Eaton* v. *Railroad*, *supra*, recognizes the doctrine that this rule authorizes suits against municipalities for damage to property occasioned in the execution of a public work. It is urged that this rule applies only to property that is taken directly for, and not merely in the course of the execution of, public works. For example : If it is useful for a municipality to lay a water pipe across A's land, he is to be compensated ; and if the act be done without process of law

or his consent, he may have redress. On the other hand, if in the building of the same water-works the superintendent negligently floods B's garden, it is said that the corporation is not liable because the act does not inure to the benefit of the municipality. If this reasoning were sound, it would follow that the measure of A's damages would be the benefit to the municipality; and the fact that he is entitled to the value of the property taken shows conclusively that the right to recover rests upon a broader principle than that of an implied promise to pay for benefits received. In these matters, "the dictate of justice is that no person shall suffer unequally, and, if he does, that all should make compensation." 2 Dill. Mun. Cor., s. 1051, c.

It is also said that the flooding of B's land is not the result of a public work, but of the negligence of the superintendent, and, therefore, the municipality is not liable. The answer to this is that the law so far takes notice of the fallibility and imperfection of all human endeavor that one who entrusts his affairs to his servant, under instructions, either express or implied, to do only that which is lawful, is responsible for the neglect of the servant so to do. The general rules of agency apply to towns. They are "subject to the same implications arising from their corporate acts, or the acts of their agents within the scope of their authority, without either vote, deed, or writing, as in the case of natural persons." *Glidden* v. *Unity*, 33 N. H. 571, 577; *Holderness* v. *Baker*, 44 N. H. 414, 417; *Gray* v. *Rollinsford*, 58 N. H. 253; *Kinsley* v. *Norris*, 62 N. H. 652.

The claim is also advanced that it is unconstitutional to take the taxpayer's property to pay damages caused by the negligent acts of the superintendent,—that the power to tax extends only to public purposes, and not to making reparation for injuries done by public agents. The argument proves too much. It denies the right to tax for any but strictly governmental purposes; while the law is that "in determining this question, the legislature cannot be held to any narrow or technical rule. Not only are certain expenditures absolutely essential to the continued existence of the government and the performance of its ordinary functions, but as a matter of policy it may sometimes be proper and wise to assume other burdens which rest entirely upon considerations of honor, gratitude, or charity." Cool. Con. Lim. *488. For many years towns in this state have been called upon to respond to suits to enforce a statutory liability for damages caused to individuals by a failure to keep highways in repair. Although there was no such liability at common law, and although the nature and extent thereof under the statute has been treated of at great length, it has never before been suggested that the statute was an unconsti-

tutional infringement of the rights of taxpayers. If their property may be taken for a liability which was unknown to the common law, much more may it be for municipal obligations which the common law recognized.

The argument that, according to a perfect theory of the nature and end of all government, municipalities partake of the sovereign character of the state, and so cannot be liable to suit except when made so by statute, has not been overlooked. The argument would be entitled to weight if this was a new question, but that is not the present situation. It may be that a corporation, in part governmental and sovereign, and in part individual and accountable, does not satisfy the demands of pure reason or realize the ideal of those skilled in political science. The same thing may be said of many of the rules of the common law which have been adopted; yet those rules are of binding obligation. *Thompson* v. *Esty*, 69 N. H. 55. So as to the nature of municipal corporations, the theory of their dual character is too firmly imbedded in the common law to be removed, except by the law-making power. Whether it would be better if they were liable for every breach of duty, as suggested in *Ball* v. *Winchester*, 32 N. H. 435, 442, or whether, as the defendants here contend, they ought not to be liable at all, is a question to be settled by the legislative department of the government.

Ever since the time of the Roman empire, municipalities have been subject to private law relations, not applicable to sovereignty. 1 Dill. Mun. Cor., *s.* 3. The exact location of the divisional line between those matters which are governmental and those which are not, has not always been clearly indicated. Courts have not agreed upon the precise location of the line; but there has been no dissent from the proposition that municipalities have duties on each side thereof. This has been the law of the state for many years. It may fairly be assumed that many instances of legislative action or non-action have been based upon it. Like the doctrine of the peculiar corporate character of proprietors of towns, the authority for it is to be found " in the records of New England, in the decisions of courts." *Proprietors of Cornish* v. *Kenrick*, Smith (N. H.) 270, 273. It is a part of the common law, and cannot be abolished except by the law-making power.

. It may be, and probably is, true that the decided cases do not cover every phase of common-law municipal liability that may arise; but as they have sufficiently established the law for the purposes of the present case, it is not essential to pursue the general subject further. Nor is it necessary to inquire whether the grounds upon which non-liability has been placed are sound. The cases in which such a conclusion has been reached are of conse-

quence here only so far as an investigation of them is needed to show that they are not based upon a theory of general municipal immunity from suit. Taking the law as it has been declared in this state, a town is liable for the negligence of its agents which affects the private property right of others. Is it any less liable when the right involved is personal instead of proprietary?

The basis of the cause of action is the infringement of a private right, a violation of those rules of conduct which from being custom became law, and which now govern the conduct of all in their relations to others, be those relations either personal or proprietary. A private right is infringed when a person's health is injured by emptying a sewer wrongfully in the vicinity of his residence, the same as when water is wrongfully turned upon his land. "On the question of liability, it might not be material whether the invasion were of bricks or of polluted atmosphere." *Towne* v. *Thompson*, 68 N. H. 317, 322. The case does not differ in principle from that of an employee who is entitled to be provided with a reasonably safe place in which to work, and to be associated with reasonably competent fellow-servants. The landowner's right of property and the laborer's right of personal safety are alike given by the common law. They are both private rights, and the invader of the one is no more bound to answer for his acts than the infringer of the other. "The whole superstructure of the liability of municipal corporations for negligence and for trespasses upon property is built upon the same idea; since there can be no distinction on principle between the case where a municipal corporation — let us say in the prosecution of some public work, within its charter powers — unlawfully damages my property or injures my person, and where, acting for its own purposes, and within the scope of its charter powers, it takes my property." Seymour D. Thompson in 33 Am. Law Rev. 708.

The rule which governs this case is clearly stated by *Perley*, C. J., in *Eastman* v. *Meredith*, 36 N. H. 284, 295, where it is said: "The plaintiff, in cases of this character, does not recover on the ground that he has been denied any public right which the corporation owed to him as a citizen of the town, or because he has suffered an injury in the exercise of a public right, from the neglect of the town to perform a public duty. The corporation being authorized by law to execute the work, if, in their manner of doing it, they cause a private injury, they are answerable in the same way and on the same principle as an individual who injures another by the wrongful manner in which he performs an act lawful in itself. It has been sometimes made a question, whether in the particular case the corporation were liable as principals for the conduct of those who performed the work on their account;

but where a work is once conceded to be done by the corporation, it would seem to be clear, on authority and general principles, that a corporation, public or private, must be held liable like an individual for injuries caused by negligence in the process of executing the work." For more than forty years this decision has been acted upon as correctly stating the law applicable to this class of cases. It states the law, not only of this jurisdiction, but of every jurisdiction where the common law prevails. "It is . . . universally considered, even in the absence of a statute giving the action, that" municipal corporations " are liable for acts of misfeasance positively injurious to individuals, done by their authorized agents or officers, in the course of the performance of corporate powers constitutionally conferred, or in the execution of corporate duties." 2 Dill. Mun. Cor., *s.* 966. The case which announced the adoption here of this unquestioned rule of the common law cannot be held to have been overruled, together with the cases which have followed it, by remarks made in a case where the question was not involved and in which these cases are not mentioned. The case at bar falls within the rule laid down by these authorities. The complaint is of wrongful acts injurious to an individual. The term " private injury," as used in *Eastman* v. *Meredith, supra,* is synonymous with " private wrong," which is defined as " an infringement or privation of the private or civil rights belonging to individuals, considered as individuals," as distinguished from public wrongs, which " are a breach and violation of public rights and duties which affect the whole community, considered as a community." 3 Bl. Com. 2. " Private wrongs, . . . being an infringement merely of particular rights, concern individuals only, and are called civil injuries ; . . . public wrongs, . . . being a breach of general and public rights, affect the whole community." 1 Bl. Com. 122. To determine what conditions or situations have the elements of private rights, as above defined, reference must be had to the positive law. The terms " private wrong " and " private right " cannot be defined further than to say that they include all those duties due from one person to another, for the breach of which the law gives an action. See 4 Bl. Com. 5, note ; *Ladd* v. *Brick Co.*, 68 N. H. 185. Except as to those guaranteed by the constitution, private rights may be modified or enlarged by legislative action ; but until this is done they remain as they were at the common law. So in this case, the contract of the parties created a situation which gave the plaintiff the common-law right to be furnished a reasonably safe place in which to work. The existence of the right cannot be doubted. It was a " particular right " concerning the individual only, and not one which " affected the whole community." It was in every sense such a right that a negligent violation of it

would be a civil injury or private wrong. It in no way depended upon the performance or non-performance by the defendants of any public duty.

Were the water commissioners servants of the city, or were they "an independent board" whom the city could not "direct or control" "in the discharge of their duties"? The act authorizing the city to establish water-works gives the full control thereof to the city, and provides that "the city may, either before or after the construction of the same, place them under the direction of a superintendent, or board of water commissioners, or of both, with such powers and duties as may, from time to time, be prescribed by the city council of said city." Laws 1871, c. 69, s. 5. Acting under this authority the city passed an ordinance establishing a board of water commissioners, to whom it entrusted the entire management of its water-works. Concord Rev. Ord. 1894, c. 22, ss. 2, 4. It is argued that this ordinance is in effect the same as a statute enacted by the legislature, and that therefore the commissioners come within the class of independent officers whose acts the city cannot control or regulate and for which it is not liable. The defect in this reasoning is apparent. The officer whose duties are fixed by the legislature is beyond the control of the city; and however much it may desire to change those duties, it is powerless to do so. On the other hand, the ordinance in this case, although enacted in the form of legislation, is a mere rule of conduct or delegation of authority given by the city itself to those employed in its service. It may change the duties or take away the powers granted at any time; and the ordinance in express terms reserves to the city councils the right to remove the commissioners. *Ib.*, s. 3. The commissioners were servants of the city. *Grimes* v. *Keene*, 52 N. H. 330, 335.

The defence that the suit should be against the precinct and not against the city is not available. "The water commissioners are the officers of the whole city and not of the precinct, are elected by the city councils, and, so far as they are answerable for their conduct, are answerable to the city and not to the precinct." *Brown* v. *Concord*, 56 N. H. 375, 379.

*Demurrer sustained.*

PARSONS and YOUNG, JJ., concurred in the result only, holding that there is a statutory liability and dissenting from the decision that there is a liability at common law: the others concurred.