Rockingham, June 1, 1943. } No. 3409.

### FRANK J. LANGDON, & a.

*v.*

### MAINE-NEW HAMPSHIRE INTERSTATE BRIDGE AUTHORITY.

*William H. Sleeper* (by brief and orally), for the plaintiffs.

*Sewall, Varney & Hartnett* (*Mr. Sewall* orally), for the defendant.

BRANCH, J. It clearly appeared in evidence, and the court so instructed the jury, that all the alleged acts of trespass were committed within the limits of the original layout of the Lafayette Road. Lafayette Road is a state highway within the exclusive control of the State of New Hampshire. The only exception taken by the plaintiffs to the above instruction was as follows: "That as to the plaintiffs, the Bridge Authority did not have the same right that the State of New Hampshire had. They had no more right to remove, as we claim, than any other corporation or individual without the consent of the owner." This exception is without merit.

The Authority is a public agency, a branch of the executive department of the state government. *Ham* v. *Authority, ante,* 268. It was not necessary for the State, acting in this capacity, to secure, by condemnation or otherwise, any rights which it already possessed in another capacity. It is true that Article V of the compact under which the defendant is created provides as follows: "No property now or hereafter vested in or held by either State . . . shall be taken by the Authority without the authority and consent of the State." Laws 1936, Sp. Session, *c.* 4, *s.* 1, Art. V. The consent of the State to the operations of the defendant upon the Lafayette Highway was clearly to be implied from the testimony that the chairman of the Bridge Authority was Mr. Everett, State Highway Commissioner. Under these circumstances any suggestion that the Bridge Authority acted without the consent of the State in widening the Lafayette Road is entitled to slight consideration. Whatever the effect of the foregoing provision may be, it is plain that the plaintiffs' rights were not affected thereby, and the plaintiffs are in no position to assert that the Authority acted without right.

The conduct of which the plaintiffs really complain was as follows. For the purpose of furnishing access to one of the approaches to the interstate bridge, the defendant deemed it necessary to widen Lafayette Road in front of the plaintiffs' dwelling. In order to do this, they removed a retaining wall which had previously been constructed by the State within the limits of the highway and cut down an embankment, also within the limits of the highway, which the plaintiffs had long used as a part of the front yard of their dwelling. As a result of these acts, the plaintiffs claim to have been deprived

of their right of lateral support. The plaintiff Hazel appeared to be particularly outraged by the violent manner in which the wall was removed, and claimed that the yard was left in an unsightly and inaccessible condition, as a result of which the overnight tourist business which she had formerly conducted was greatly injured. It was her position that, as an abutting owner on the highway, she was entitled to make use of that part of the highway which was not actually used for public travel and that the conduct of the defendant constituted a taking of her property which was not contemplated or compensated when the original layout was made.

It is the contention of the defendant that, since it is a "branch of the executive department of the state government" (*Ham* v. *Authority, supra*), it is not subject to liability for any of the damages suffered by the plaintiffs in this case. In the opinion last cited, however, it was said: "Conceivably the Authority might be sued for encroachments in the nature of trespass if it took more land than the location of the highway includes." This is in substance the claim of the plaintiffs here, namely, that the defendant has taken more rights in their land than the original layout of the highway included, and we are now called upon to decide definitely whether the Authority can be sued for "encroachments in the nature of trespass." We think that the rules applicable to other corporations of a public nature apply with equal force to the defendant, and we think that the considerations which led the court to the conclusion that towns are liable for damages caused by the improper or unsuitable construction and maintenance of a road, or by a construction and maintenance that have not a proper regard for an abutter's rights, lead to the conclusion that there must be liability in the present case. *Gilman* v. *Laconia*, 55 N. H. 130; *Rhobidas* v. *Concord*, 70 N. H. 90. Of particular force is the argument that a contrary result would bring the matter within the (implied) constitutional prohibition against taking private property for public uses without compensation. *Gilman* v. *Laconia, supra*, 131. Since the defendant may be liable for a taking in excess of its authority, and since proper suits against it are specifically authorized by the enabling act (Laws 1936, Sp. Session, *c.* 4, *s.* 6), it follows that its motion for a nonsuit was properly denied.

The plaintiffs cannot complain of the charge of the court upon the issue of damages. It was largely based upon the plaintiffs' theory of the case, and with reference to the retaining wall, in particular,

gave the plaintiffs all that they were legally entitled to receive. The portion of the charge by which the jury were told that Mrs. Langdon "cannot have any loss of her tourist trade included as an element of damage" was, upon the evidence, eminently proper.

No exception to the charge upon the issue of damages was taken by the defendant and no question of its accuracy with reference to the elements of damage allowed is before us for consideration.

*Judgment on the verdict.*

All concurred.